CHARLES M. FAUCI *vs.* FRANCES DENEHY & others.

Middlesex. December 8, 9, 1954. — June 10, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Contract,* Entire or divisible, Performance and breach, Novation, Construction.

A conclusion that an agreement between beneficiaries of a trust for its dissolution and a distribution of its various properties between them, for certain payments between them, and for the giving of a mortgage by one to the other on property to be received by the mortgagor to secure sums payable by him to the mortgagee was an entire and not a divisible agreement was proper in the circumstances. [696]

Where performance of some of the obligations under an agreement which was entire and not divisible was rendered temporarily impossible by reason of a supervening event beyond the parties' control, one party was not entitled, while such impossibility of complete performance continued, to performance by the other party of certain other obligations which had not been so rendered impossible of performance. [696]

A conclusion by a master, that a sale of corporate stock standing in the defendant's name to a third person and the third person's payment of one half the purchase price to the defendant for a one-half interest which she had in the stock, pursuant to an oral agreement participated in by both the plaintiff and the defendant, did not constitute a novation modifying a previous written agreement between the plaintiff and the defendant whereby the stock was to go to the plaintiff and he was to pay the defendant a substantially larger amount for her

one-half interest, was supported by the master's subsidiary findings that the minds of the parties as to the effect of the transaction with the third person never met, that the plaintiff treated the third person's payment to the defendant as full satisfaction of the plaintiff's obligation to the defendant under the previous agreement but the defendant treated it as merely a pro tanto satisfaction thereof, and that the defendant never negotiated with the third person over the price of the stock but regarded that matter as something concerning the plaintiff and the third person only. [697–698]

Under an agreement whereby a mortgage was to be given in an amount including an approximately stated sum "representing her [the mortgagee's] personal loans" to a store "as set forth in" a preceding provision of the agreement requiring the mortgagor to repay to her loans she "has made" to the store, the sum so to be included in the mortgage should represent only the amount of her loans prior to the date of the agreement, not the total amount of her loans both before and after that date. [698–699]

BILL IN EQUITY, filed in the Superior Court on July 3, 1952.

The defendants appealed from a final decree entered by order of *Kirk*, J., after hearing on a master's report.

*Courtland A. Mathers*, for the defendants.

*Vincent R. Brogna*, for the plaintiff.

SPALDING, J. This is a suit for an accounting.

Pertinent findings of the master, to whom the case was referred, include the following. In the 1940's the plaintiff operated several corporate enterprises, one of which was the First National Liquor Company. This company operated a liquor store on Hanover Street, Boston, and will be referred to hereinafter as the store. During this period the plaintiff claimed ownership in certain real estate which included two houses located respectively at 127 and 129–131 Mystic Avenue, Medford, a house on Cliff Road, Wellesley (hereinafter called the Cliff Road property), and a building on Stanhope Street, Boston (hereinafter called the Stanhope Street property). The legal title to these properties, including the shares of stock of the store, stood in the name of the defendant Denehy, a sister of the plaintiff's deceased first wife. The plaintiff's claim of ownership to these properties was disputed by Denehy.

In July, 1950, the plaintiff and Denehy made a trust

agreement by which it was agreed that the aforementioned properties and interests would be turned over to the Mystic Avenue Real Estate Trust, of which one Hadley and one Loeb were trustees. Pursuant to the agreement all of this property was turned over to the trust with the exception of the Cliff Road property, which Denehy had previously conveyed to Ernest and Helen L. Hertwig. The Hertwigs had sold this property in March, 1950, the net proceeds of the sale being $14,436.30. They assert no claim to this fund and are holding it as stakeholders.

Shortly after the trust was created the plaintiff became dissatisfied with its operation and brought a suit to terminate it. While this suit was pending the plaintiff, his wife, Denehy and the Hertwigs made an agreement dated October 20, 1951, to distribute the property in the trust and also the proceeds from the sale of the Cliff Road property. This agreement will hereinafter be referred to as the October agreement.

The trustees and the attorneys for the plaintiff and Denehy, on learning of the contemplated distribution of the trust assets, made an agreement with the parties to the October agreement whereby their trustees' and attorneys' fees, amounting to $10,000, would be secured. That agreement, dated December 12, 1951, was incorporated by reference into the final decree (entered December 14) in the aforementioned suit, and created, in effect, a lien on the trust property. As a result the parties to the October agreement were prevented from distributing the trust property until the fees had been paid. Because of the existence of a Federal tax lien on the Stanhope Street property for tax claims against both the plaintiff and Denehy it was impossible to raise money on this property for the payment of the fees and it was for this reason that the lien on the trust property was agreed to. By November 22, 1952, the fees were paid in full out of the income of the property. It was agreed before the master that prior to this time the performance of the October agreement was impossible and that this impossibility was not the fault of any of the parties.

Most, if not all, of the controversies here involved arise out of the October agreement. The portions of that agreement with which we are chiefly concerned are paragraphs 5, 6, and 11 which are set forth in the footnote.[1] While no time for performance was mentioned in the agreement it was agreed before the master that "its provisions were to be carried out within a reasonable time."

Shortly after the execution of the October agreement, and several times thereafter, the plaintiff requested performance of paragraphs 5 and 6, but Denehy refused to perform on the ground that the agreement was entire and not separable and that there was no obligation on her part to perform unless the whole agreement could be performed. It was orally stipulated before the master that the impossibility of performance did not extend to paragraphs 5 and 6 "so that the parties could have carried out . . . [these paragraphs] provided the October agreement permitted such piecemeal" performance.

In January, 1953, the beneficiaries of the trust (the plaintiff and Denehy) assigned all the issued and outstanding shares of the store to one Piemonte, and Piemonte paid Denehy $2,819.52 for her one-half interest.

The master made no finding as to whether Denehy was entitled to reject the plaintiff's offers to perform paragraphs 5 and 6, but he found in the alternative the amounts due from the plaintiff to Denehy, depending on whether or not her refusal to perform was justified.[2] Other findings of the master will be recited as occasion requires.

---

[1] "5. The First National Liquor Store on Hanover Street is to go to Charles M. Fauci and he is to pay Frances Denehy $7,500.00 for her one-half interest therein plus a sum, to be determined from the books of said store, for repayment of loans she has made to the store personally.
"6. The sum of $14,500.00 (approximately) representing the proceeds of the Cliff Road property is to be divided equally between both parties."
"11. Charles Fauci and his wife Edna Fauci are to give Frances Denehy a mortgage on the entire properties going to Charles Fauci and wife, said mortgage to run for six months at six percent, and be in the sum of $20,000.00 representing her share of the . . . [Stanhope Street property] under provision 4 plus the sum of approximately $7,500.00 representing her personal loans to the First National Liquor Store as set forth in provision 5."

[2] "I find that, if as a matter of law, the respondent Frances Denehy was justified in rejecting the plaintiff's offers to carry out paragraphs 5 and 6

The master's report was confirmed by an interlocutory decree which also overruled the plaintiff's exceptions. From this decree there was no appeal. The court then entered a final decree containing two paragraphs. Paragraph 1 ordered Denehy and the Hertwigs to pay to the plaintiff $2,537.67 with interest thereon from October 20, 1951, in the sum of $360.35. The principal sum is the difference between one half the Cliff Road proceeds ($7,218.15) and the balance necessary for Denehy to realize $7,500 on the sale of her one-half interest in the store ($4,680.48).[1] Paragraph 2 of the decree ordered the plaintiff, when the trust is terminated, to deliver to Denehy a mortgage on the properties located at Stanhope Street, Boston, and 129 Mystic Avenue, Medford (both of which were to go to the plaintiff under the October agreement), in the sum of $20,668.68 payable in six months with interest at six per cent.[2] The defendants appealed.

Where, as here, the master makes no ultimate finding touching the respective liabilities of the parties, it is open to this court to draw its own inferences from the subsidiary findings without regard to the inferences drawn by the judge below. *Morin* v. *Clark*, 296 Mass. 479, 485.

of the October 20, 1951, agreement piecemeal and not simultaneously with the other provisions of the agreement, then there is due from the plaintiff to the respondent Frances Denehy the sum of $4,680.48, and that the sum of $12,364.74 by agreement of the parties, is to be added to the mortgage on the Stanhope Street property, as set out in paragraph 11 of that agreement."

"I find that if, as a matter of law, the respondent Frances Denehy was not justified in rejecting the plaintiff's offers to carry out paragraphs 5 and 6 of the October 20, 1951, agreement piecemeal and not simultaneously with the other provisions of the agreement, then the plaintiff is not liable for the net difference between advances and repayments after October 20, 1951, which net difference amounts to $5,174.59, and that in such event there is due from the plaintiff to the respondent Frances Denehy the sum of $4,680.48, and the sum of $5,174.59 [*sic*] [$7,190.15?] is to be added to the mortgage on the Stanhope Street property, as set out in paragraph 11 of that agreement."

[1] Under paragraph 5 of the October agreement the amount Denehy was to receive from the plaintiff for her interest in the store was $7,500 but she had received $2,819.52 from Piemonte and this was subtracted from the amount called for in the agreement to arrive at the figure $4,680.48.

[2] Under paragraph 4 of the October agreement the Stanhope Street property was to go to the plaintiff and he was to pay Denehy for her one-half interest therein. Under paragraph 11 the plaintiff was to give a mortgage to Denehy on all of the properties going to him. The mortgage was to be in the sum of $20,000 (representing her share in the Stanhope Street transaction) "plus the sum of approximately $7,500.00 representing her personal loans to the First National Liquor Store as set forth in . . . [paragraph] 5."

*LaChance* v. *Rigoli*, 325 Mass. 425, 426. The principal question for decision is whether Denehy was justified in refusing the plaintiff's offers to perform paragraphs 5 and 6. The October agreement deals with several pieces of property and the master found that the value of these properties was arrived at as a whole. Thus in the case of the store the price set for the shares was "quite unrealistic" and "was arbitrarily arrived at only as a part of . . . [the] whole." He further found that at the time the October agreement was executed "it was the intention of the parties that the various provisions of the agreement were mutually dependent, i.e. to be consummated simultaneously and not piecemeal." We are of opinion that the findings of the master, the agreement as a whole, and especially paragraph 11, lead to the conclusion that the agreement was entire and not separable.

The voluntary agreement of December 12, 1951, touching trustees' and attorneys' fees which was incorporated in the decree of December 14 required a delay in performance of all the terms of the October agreement except paragraphs 5 and 6. Thus complete performance within a reasonable time as contemplated by the parties when the agreement was made was rendered impossible by reason of a supervening event beyond the control of the parties. If the plaintiff had been able to tender complete performance of his part of the agreement he could have demanded from Denehy whatever performance she was able to give. *Kares* v. *Covell*, 180 Mass. 206, 208. *Cashman* v. *Bean*, 226 Mass. 198, 202. *Dennett* v. *Norwood Housing Association, Inc.* 241 Mass. 516, 521. But this he was unable to do. Because of the supervening impossibility he was in no better position to perform fully than was Denehy. This, then, was not a case for partial performance and the trial judge erred in ordering in paragraph 1 of the decree what amounted to partial performance.

The impossibility of performance here was temporary. This would not discharge a promisor's duty to perform unless his performance, after the impossibility had ceased,

would have subjected him to a substantially greater burden than would have been imposed had there been no impossibility. Restatement: Contracts, § 462. Williston, Contracts (Rev. ed.) § 1957. See *Baylies* v. *Fettyplace*, 7 Mass. 325, 330–333; *Pead* v. *Trull*, 173 Mass. 450; *Webb Granite & Construction Co.* v. *Worcester*, 187 Mass. 385, 390–391; *Boston Penny Savings Bank* v. *Boston & Maine Railroad*, 244 Mass. 488, 491. Neither party contends that the October agreement ought to be discharged because of the delay. Both have argued the case on the footing that the agreement is still operative and we shall so deal with it.

The plaintiff contends, however, that the transfer of Denehy's shares to Piemonte amounted to a novation. This novation, it is argued, operates as a modification of the October agreement, because the sale of the shares to Piemonte was on different terms from those called for by the agreement.[1] Thus, according to the plaintiff, he is relieved from any further liability under that portion of the October agreement (paragraph 5) in which he agreed to pay Denehy $7,500 for her interest in the store.

The sale of the shares to Piemonte was pursuant to an oral agreement to which the plaintiff as well as Denehy was a party. The master found on all the evidence that this transaction did not constitute a novation. This was a question of fact. *Slotnick* v. *Smith*, 252 Mass. 303, 306. *Codman* v. *Beane*, 312 Mass. 570, 575. This finding, unless inconsistent with subsidiary findings, must stand. *MacLeod* v. *Davis*, 290 Mass. 335, 338. *Sprague* v. *Rust Master Chemical Corp.* 320 Mass. 668, 675. The subsidiary findings of the master are not inconsistent with his general finding. On the contrary they tend to support it. He found that the minds of the plaintiff and Denehy as to the effect of

---

[1] The terms of the sale to Piemonte were these: Piemonte was to purchase the store "for a price based on $15,000 for the liquor license, plus or minus the net assets or liabilities of the store; i.e., if the inventory, physical assets and accounts receivable were shown to be greater than the accounts payable, then Piemonte was to pay to the shareholders the difference as an addition, while if the accounts payable were greater, then he was to deduct the difference." In fact there was a deficit of $4,680.48 attributable to Denehy which accounts for the fact that she received only $2,819.52 for her shares.

the Piemonte transaction never met; and that the plaintiff treated it on the basis that the payments by Piemonte were to be in full satisfaction of his obligation under paragraph 5 of the October agreement. Denehy, on the other hand, at no time in her dealings with the plaintiff treated the transaction as a modification of the October agreement. Rather she treated the payment by Piemonte as a pro tanto satisfaction of what the plaintiff owed her under paragraph 5. She never negotiated with Piemonte over the price but regarded that matter as something with which only the plaintiff and Piemonte were concerned. Plainly these findings do not require the conclusion that there was a novation. At most the transfer would indicate a modification as to the time of performance of a portion of paragraph 5. .

Since it has been established that Denehy was justified in refusing performance of paragraphs 5 and 6 and that these provisions were never modified, we turn to the following finding of the master: "I find that, if as a matter of law, the respondent Frances Denehy was justified in rejecting the plaintiff's offers to carry out paragraphs 5 and 6 of the October 20, 1951, agreement piecemeal and not simultaneously with the other provisions of the agreement, then there is due from the plaintiff to the respondent Frances Denehy the sum of $4,680.48, and that the sum of $12,364.74 by agreement of the parties, is to be added to the mortgage on the Stanhope Street property, as set out in paragraph 11 of that agreement." But under paragraph 2 of the decree the plaintiff is ordered "to execute and deliver at the time of the termination of the Mystic Avenue Real Estate Trust . . . a note and mortgage . . . [on the properties located at Stanhope Street and 129 Mystic Avenue] in the total amount of $20,668.68, payable in six months, with interest at six per cent." This was error. Under paragraph 11 of the October agreement the plaintiff was to give Denehy a mortgage of $20,000 on the properties going to him for her share of the Stanhope Street property "plus the sum of approximately $7,500.00 representing her personal loans to . . . [the store] as set forth in . . . [paragraph] 5." Un-

der paragraph 5 the plaintiff agreed to pay her in addition to the $7,500 for her interest in the store "a sum, to be determined from the books of said store, for repayment of loans *she has made* to the store personally" (emphasis supplied). The master found that the amount of Denehy's loans prior to the date of the October agreement, after deducting sums repaid to her, was $7,190.15. But paragraph 2 of the decree awarded Denehy only $668.68 for these advances. How this figure was arrived at is not disclosed. The finding of the master on the other hand reimburses Denehy for all loans made by her to the store both before and after October 20, 1951, the date when the agreement was signed. This was likewise erroneous. While the master states that this award of $12,364.74 was "by agreement of the parties," we interpret this to mean not that they had stipulated that this amount was due but rather that this was the effect of the October agreement. But under that agreement the plaintiff was to reimburse Denehy only to the extent of "approximately $7,500" "for repayment of loans she has made to the store." The agreement says nothing as to future advances. Accordingly there should be added to the amount of the mortgage and note of $20,000 the sum of $7,190.15 to reimburse Denehy for loans prior to October 20, 1951.

The final decree must be reversed and a new decree is to be entered substantially as follows: The amount, except for interest, decreed to be paid by Denehy and the Hertwigs to the plaintiff in paragraph 1 is to remain unchanged. And the time for performance is to be postponed until such time as the entire agreement is performed. That would be the same as the time stated in paragraph 2, namely, upon "the termination of the Mystic Avenue Real Estate Trust." Paragraph 2 is to provide for a mortgage and note payable in six months, with interest at six per cent, on the properties at Stanhope Street and 129 Mystic Avenue in the amount of $27,190.15. The time for performance is to remain the same. The defendants are to have costs of this appeal.

*So ordered.*