WILLIAM C. SEWARD & another *vs.* ALICE W. WEEKS & another.

Dukes County. September 15, 1971. — November 8, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & BRAUCHER, JJ.

*Landlord and Tenant*, First refusal clause. *Law or Fact.*

Where a lease is before this court as part of the record on appeal from a decree in a suit in equity, this court is in the same position as the trial judge and the construction of the lease is a question of law upon which this court is not bound by any conclusions of the trial judge. |413|

Where a lease gave to the lessor an option to purchase the demised premises "|i|n the event of a contemplated sale |of the premises| during the demised term" it was held that the option applied only to a sale to be completed during the term of the lease, so that a sale which, although contemplated during the term of the lease, was not completed until after the expiration of the lease gave to the lessor no rights with respect to the option to purchase. |413–415|

BILL IN EQUITY filed in the Superior Court on September 4, 1968.

The suit was heard by *Brogna*, J.

*Thomas J. Sartory* for the defendant Lewis G. King.

*Arnold L. Slavet* (*Alton L. Horte, Jr.*, with him) for the plaintiffs.

CUTTER, J. Seward and his wife, under a written lease (the 1954 lease), leased from Mrs. Weeks and her late husband land in Chilmark (the locus) for one year beginning on November 1, 1954. It was provided "that thereafter this lease shall be automatically renewed for nine . . . additional one year period(s) unless the . . . Lessee [Sewards] shall give to the Lessor [Weeks and his wife] thirty . . . days written notice to the contrary prior to the expiration of the . . . period or of any renewal period. Upon expiration of the . . . additional renewal period(s) this lease shall continue thereafter from year to year unless either

Lessee or Lessor shall give the other 120 days notice (written) prior to the commencement of any yearly renewal period." There was a further provision (for convenience hereafter called "the first refusal article ') which reads, "*In the event of a contemplated sale during the demised term* of the said real estate [the locus] . . . the Lessor agrees to give to the Lessee a notice in writing at least sixty . . . days before the contemplated sale of the substance of the terms upon which it is proposed to be made . . . and thereafter within sixty . . . days from the . . . mailing of said notice the Lessee shall have the right to purchase said premises [the locus] upon the terms and conditions proposed, and on failure of the Lessee to exercise such option within the time aforesaid the option hereby granted to the Lessee shall be . . . cancelled" (emphasis supplied). The lease contains a covenant by the lessor for the lessee's quiet enjoyment of the locus "for the . . . term or any extension thereto." The lease was recorded in the registry of deeds in 1962. The principal issue before us is the interpretation of the italicized language in the first refusal article.

Weeks and his wife on March 11, 1968, entered into a written option agreement with Lewis G. King, also a defendant, regarding a sale on December 31, 1968, of the locus and certain other property. About April 18, 1968, the Sewards came to believe that Weeks and his wife "were considering . . . selling . . . [to King] property . . . which included the" locus. The Sewards thereupon notified Weeks and his wife that the former "wished to know the terms of the arrangement so that they could . . . consider exercising their option to purchase." They also mailed a copy of their letter to King and notified him that they intended to purchase the locus.[1]

On June 18, 1968, Mrs. Weeks, by her attorney, sent Seward a notice to terminate the lease on October 31, 1968.

---

[1] To this letter King replied on April 20, 1968, that he had signed a purchase and sale agreement with Weeks and his wife. He had not actually signed a purchase and sale agreement, but on November 4, 1968, he exercised the option to purchase under the option agreement of March 11, 1968.

On June 24, 1968, the Sewards, by their attorney, notified the attorney for Mrs. Weeks that they intended to exercise their option to purchase. On Septemper 4, 1968, the Sewards brought this bill in equity against Mrs. Weeks and King, among other things, (a) to enjoin Mrs. Weeks[2] from evicting them from the locus and from taking any action to sell or transfer it, and (b) to prevent King from taking any action to purchase the locus. The case was heard on a partial statement of agreed facts, and also on testimony and exhibits.[3] A final decree was entered declaring (1) the first refusal article to have been binding on Mrs. Weeks when she (and her husband) "entered into a contemplated sale of the" locus to King and (2) that Mrs. Weeks violated the first refusal article. It also enjoined Mrs. Weeks from selling the locus to anyone but the Sewards "until and unless the . . . [Sewards] are given a notice" which complies with the first refusal article. King appealed.

Essentially all the facts already outlined are established by exhibits or by the partial statement of agreed facts. Certain further facts, stated in the report of material facts (see fn. 3), are set out in the margin.[4]

1. King does not argue that the 1954 lease did not remain in effect as extended until its termination by notice effective on October 31, 1968. Accordingly, we assume, without deciding, that the first refusal article remained in effect (see *Manaster* v. *Gopin*, 330 Mass. 569, 571–573; *Gibbs Realty & Inv. Corp.* v. *Carvel Stores Realty Corp.*

---

[2] Her husband died on May 1, 1968.

[3] The testimony is not reported. There is a report of material facts. The exhibits are before us. Among the facts agreed was that the Sewards have been operating a general market in Menemsha about one-half mile from the locus. They have never (or not for a long time) operated a market at the locus but have used it only for the storage of groceries for their Menemsha store.

[4] The pertinent facts found by the judge, not dealt with in the partial statement of agreed facts, included the following mixed finding and ruling, viz. the first refusal article "was still in effect and had not been waived during the spring, summer, and fall of 1968." Findings by the judge concerning a lease to others of a portion of the locus do not appear to be the subject of any present argument by King and need not be stated.

351 Mass. 684, 685–686) according to its terms until the termination of the 1954 lease effective on October 31, 1968, and that whatever rights and interests the Sewards had under the first refusal article were entitled to protection until the lease terminated. See *Fanger* v. *Leeder*, 327 Mass. 501. The question before us is to determine the correct interpretation of the first refusal article.

2. The entire 1954 lease is before us. The partial statement of agreed facts and the exhibits are sufficiently complete to enable us to decide the case.[5] We are in the same position as the trial judge with respect to interpreting the lease. We treat our scope of review as essentially that upon a case stated. See *New England Foundation Co. Inc.* v. *American Mut. Liab. Ins. Co.* 358 Mass. 157, 158–159.

The principal question is the meaning of the provision, quoted earlier, in the first refusal article, viz. "a contemplated sale during the demised term of the" locus. The Sewards contend that, because the testimony is not reported, the trial judge's interpretation of this language is binding upon us. We think this contention wholly without merit. The interpretation of the written lease is a matter for the court on which we are not bound by the trial judge's conclusions, particularly as the problem of interpretation is not affected by any findings of fact (see fns. 4, 5) not included in the partial statement of agreed facts. See *Quintin Vespa Co. Inc.* v. *Construction Serv. Co.* 343 Mass. 547, 551–552.

King contends that the words "during the demised term" relate to the noun "sale," just as does the word "contemplated," with the consequence that the event which gives rise to an option or first refusal is a proposed or "contemplated" sale in which the actual conveyance is to take place during the term of the lease. Because this sale was to take place on December 31, 1968, after the lease had terminated on October 31, 1968, King says it gave rise to

---

[5] The judge's findings (fn. 4), supplementing the partial statement of agreed facts, do not significantly influence interpretation of the first refusal article. In view of our assumption in part 1 of this opinion, we think that these further findings are of slight, if any, importance.

Seward *v.* Weeks.

(a) no duty on Mrs. Weeks's part (by reason of the first refusal article) to notify the Sewards of the proposed sale, and (b) no power in the Sewards to exercise the option discussed in the first refusal article.[6]

King's interpretation seems to us the ordinary meaning of the words used. It is also consistent with earlier Massachusetts decisions. We read the first refusal article, not as an independent covenant or conditional option, but as an integral part of the 1954 lease and dependent upon it. See *Ober* v. *Brooks,* 162 Mass. 102, 103–105. Cf. *Brown* v. *O'Brien,* 168 Mass. 484, 487–488. No fact agreed or found by the trial judge shows basis for interpreting the crucial language as designed to afford the Sewards protection against a sale to others after the expiration of the lease. See *Cities Serv. Oil Co.* v. *National Shawmut Bank,* 342 Mass. 108, 110–111. See also *London* v. *Tebo,* 246 Mass. 360, 361–362; *C. & W. Dyeing & Cleaning Co. Inc.* v. *DeQuattro,* 344 Mass. 739, 742.

This case is not directly governed by decisions involving sales by the lessor to others, subject to a lease (e.g. *Levy* v. *Peabody,* 238 Mass. 164), or giving to the lessor a right to sell upon a stated notice to the lessee, in effect construed as giving to the lessor a conditional right to terminate the lease. See *Callaghan* v. *Hawkes,* 121 Mass. 298, 299. Such cases, however, do have some tendency to suggest that provisions in leases relating to sales to the lessee or to others may be viewed as referring to sales during the term and as designed to protect the lessor or lessee during the term.[7] Many reasons for protection of the lessee against sale by the

---

[6] He argues, also, that the requirement that Mrs. Weeks give notice to the Sewards "sixty (60) days before the contemplated sale" suggests that the sale is the crucial date and not the date of the contemplation of a sale. Under this provision of the first refusal article, no notice would have been required until sixty days before December 31, 1968, a day or so after the lease had terminated.

[7] For authorities discussing options to purchase and rights of first refusal, see Hall, Landlord and Tenant (Adams and Wadsworth's 4th ed.) §§ 105, 106; Am. Law of Property, §§ 3.82–3.83; Swaim, Crocker's Notes on Common Forms (7th ed.) § 751; Schwartz, Lease Drafting in Massachusetts, § 10.9; anno. 136 A. L. R. 138.

lessor would normally cease when his leasehold interest ceases.

The case is not one where the parties have based the existence of an option, or first refusal right, with clarity and precision upon a decision to sell, rather than the sale itself. Cf. *Chandler & Co. Inc.* v. *McDonald-Weber Co.* 215 Mass. 365, 366–367 (where it was agreed, if the owner of the interest "decides to sell its . . . interests . . . it will first notify the [other] party . . . and give it an opportunity to purchase"). If mere contemplation of a sale were to be the basis of a first refusal, there would be an inherent ambiguity concerning when the right arose and what degree of determination on the part of the lessor amounted to contemplation. This possibility of uncertainty is further reason for adopting the natural meaning of the words used by the parties.

We conclude that the first refusal article does not adequately impose upon the lessor any duty to the Sewards with respect to a sale of the locus to take place after their leasehold interest has terminated. Nothing in their use of the locus shows a special necessity of continuing that use after the end of the lease which might give occasion for thinking that the parties intended to give a special meaning to the crucial words of the first refusal article. Accordingly, we interpret those words as having application only to a "sale during the . . . term," regardless of when the sale was first "contemplated."

3. The final decree is reversed. A new final decree is to be entered dismissing the bill. The defendants are to have costs of appeal.

*So ordered.*