Town of East Longmeadow *vs.* City of Springfield.

Hampden.    January 11, 1977. — February 23, 1977.

Present: Hale, C.J., Grant, & Brown, JJ.

*East Longmeadow. Springfield,* Municipal waterworks. *Municipal Corporations,* Waterworks.

In an action by the town of East Longmeadow seeking to enjoin the city of Springfield from increasing the rates for water supplied to the town, there was no error in the judge's finding that the contract

---

for supplying water at a certain rate which had terminated in 1919 had not been renewed. [145-146]

General Laws c. 40, § 4A, was not applicable to contracts for supplying water by the city of Springfield to certain municipalities pursuant to St. 1906, c. 317, § 12, as amended by St. 1912, c. 607, § 1. [146-147]

The rate setting power conferred on the city of Springfield by St. 1872, c. 345, as amended by St. 1880, c. 30, applied only to water supplied to the city and its inhabitants and did not extend to sales by the city to other municipalities. [147]

BILL IN EQUITY filed in the Probate Court for the county of Hampden on February 8, 1974.

The case was heard by *Smith*, J.

*Joseph R. Jennings* for the plaintiff.

*John J. Brogan, Jr.*, Associate City Solicitor, for the defendant.

HALE, C.J. Since 1913 the plaintiff's municipal water system has been supplied with water by the defendant. Under cover of a letter dated December 12, 1973, the defendant notified the plaintiff of a new schedule of rates "effective January, 1974," by which it increased its water rates to $250 per million gallons (from $125 per million gallons, the rate which had been in effect since 1957). On February 8, 1974, the plaintiff brought the present action in a Probate Court seeking to enjoin the defendant from enforcing the new rate "until, by lawful and statutory procedures, the agreement between the ... [parties] is amended."

The plaintiff has appealed from a judgment which in essence determined the increase to be valid.[1] The portion of the record before us includes the pleadings, the judge's findings of fact, and certain exhibits which were before him. There is no transcript of the testimony. In these circumstances the scope of review is essentially the same as for a case stated. See *Seward* v. *Weeks*, 360 Mass. 410, 413 (1971); *Sodones* v. *Sodones*, 366 Mass. 121, 126-127

---

[1] "1. The fixing of water rates is an exercise of administrative discretion granted the Board of Water Commissioners of the City of Springfield by Special Acts of the Legislature and governed thereby.

"2. The rates fixed by the Board of Water Commissioners of the City of Springfield effective with the billing of January 1, 1974 as respects suburban towns are fair and reasonable."

(1974). We summarize the pertinent legislation which authorized the supply of water in question, the facts found by the judge, and those disclosed in the record before us.

By St. 1906, c. 317, § 12, the city of Springfield was authorized to "supply water to the town of West Springfield and to the town of Agawam, upon such terms as may be agreed upon between said city and said towns, respectively." Section 12 was later amended by St. 1912, c. 607, § 1, to provide in pertinent part that "[t]he city of Springfield, acting as aforesaid, may supply water to the cities and towns in the county of Hampden, except the city of Holyoke, upon such terms as may be agreed upon by the city of Springfield and each city and town so supplied."

On May 19, 1913, the defendant entered into a contract with the plaintiff by which it agreed to furnish water to the plaintiff from its system under certain terms and conditions at the rate of $75 per million gallons. That agreement terminated on January 1, 1919, and was not renewed. The defendant continued to supply the plaintiff with water uninterruptedly, without the benefit of a written agreement and adjusting the rate from time to time, with the last increase prior to the one in dispute having been made in 1957. The 1957 increase was voted by the board of water commissioners, apparently without the benefit of any express agreement on the plaintiff's part.

On December 12, 1973, the defendant, through its board of water commissioners, notified the plaintiff of the increase in its rate to $250 per million gallons, effective January, 1974. The plaintiff received that notice and instituted the proceedings which culminated in the judgment appealed from. The judge found that rate to be fair and reasonable. (The plaintiff asserts that there was no evidence to support that finding. We have no way of knowing what evidence was before the judge on that point. See in this regard *Souther* v. *Gloucester*, 187 Mass. 552, 556 [1905]).

The plaintiff's sole contention in its complaint as well as in its brief is that the provisions of G. L. c. 40, § 4A, were not complied with in that the sixty-day notice of termina-

tion provided for in the first paragraph of that section[2] was not given and that therefore the increased rate was a nullity. It would also appear from the limited record before us that that was the only issue presented to the judge.[3] The defendant responds to that issue by asserting that G. L. c. 40, § 4A, does not apply as the 1913 contract had expired and had not been renewed, leaving the power to set rates in the defendant's board of water commissioners by virtue of St. 1872, c. 345, § 7, which will be discussed shortly.

The plaintiff's contention must fail for at least two reasons. (1) Whether the 1913 contract was renewed was a question of fact. As to that the judge found that the contract had not been renewed. There is nothing in the abbreviated portion of the record submitted to us which would indicate that that finding was incorrect. To the contrary, that portion of the record indicates that the judge's finding was correct. As there was no contract in effect, the provisions of G. L. c. 40, § 4A, do not apply to this situation. (2) Section 4A was originally added to the General Laws by St. 1945, c. 438, while the authority for

---

[2] The first paragraph of G. L. c. 40, § 4A, as amended through St. 1969, c. 758, § 5, reads in pertinent part: "Any governmental unit, as hereinafter defined, may enter into an agreement with one or more other governmental units to perform jointly or for such other unit or units any service, activity or undertaking which each contracting unit is authorized by law to perform, if such agreement is authorized by each party thereto, in a city by the city council with the approval of the mayor and in a town or district by a town or district meeting . . .. Any such agreement may be terminated by any party thereto at the end of the fiscal year if such termination is authorized by the terminating unit in the manner aforesaid; provided, that notice of such termination is given to each other party to the agreement at least sixty days prior to the date of termination. . . . The words 'governmental unit' as used herein shall mean a city or town, a regional school district, or a district as defined in section one A."

[3] The claim in the complaint that there were violations of the Unfair Sales Act (G. L. c. 93, §§ 14E-14K) and of the Regulation of Business Practice and Consumer Protection Act (G. L. c. 93A) does not appear to have been pressed before the judge. Nor does the one sentence in the plaintiff's brief asserting that there were such violations amount to an appellate argument. Mass.R.A.P. 16(a)(4), as amended effective February 24, 1975, 367 Mass. 921.

the defendant to supply water to the plaintiff is derived from St. 1906, c. 317, § 12, as amended by St. 1912, c. 607, § 1. There is nothing in § 4A which, either by specific language or by implication, indicates that that section was intended to supersede the provisions of any earlier special act. See *Inspector of Bldgs. of Falmouth* v. *General Outdoor Advertising Co. Inc.* 264 Mass. 85, 89 (1928); *Enos* v. *Brockton,* 354 Mass. 278, 280 (1968). Contrast *McDonald* v. *Superior Court,* 299 Mass. 321, 324 (1938); *Rennert* v. *Trustees of State Colleges,* 363 Mass. 740, 743 (1973). Neither does an examination of the meager legislative history leading to the adoption of St. 1945, c. 438, indicate any such intention. We conclude that G. L. c. 40, § 4A, did not supersede or impliedly repeal the authority to contract found in St. 1906, c. 317, § 12, as amended. As the sixty-day notice period provided in § 4A is not present in St. 1906, c. 317, as amended, it is not operative in the present situation.

The defendant argues that St. 1872, c. 345, as amended by St. 1880, c. 30, provides that the city of Springfield may regulate the use of water and establish, receive, and collect the price or rates to be paid therefor. However, the rate setting power conferred by that act does not apply to sales by the defendant to other municipalities. Rather, c. 345, as amended, applies only to water supplied to the city of Springfield and its inhabitants, and the rate setting authority provided therein applies only to the setting of rates for such supply. For that reason we do not agree with that part of the judgment which in effect holds that St. 1872, c. 345, § 7, as amended, provides the authority for fixing the rates in the present case.

As previously stated, the authority of the defendant to furnish water to the plaintiff did not arise until the passage of St. 1912, c. 607, § 1. That act provided authority for the city of Springfield, among other things, to provide water to certain cities and towns in the county of Hampden, which includes the plaintiff. It did not purport to amend the earlier acts which had provided for the establishment of a water supply for the city of Springfield. Neither did

it incorporate or make reference to any of the rate setting provisions of the earlier acts. Instead, it specifically provided for such supply of water to be "upon such terms as may be agreed upon by the city of Springfield and each city and town so supplied." The plaintiff did not specifically allege in its complaint the absence of agreement to the increased charges, nor did it allege that a failure to make such an agreement would have invalidated the increase. The plaintiff does not suggest to us that the existence of any such agreement was in issue before the trial judge. Furthermore, the mere mention in its brief that the "$250 rate per million gallons, was not 'agreed upon' by the parties" is in no sense an appellate argument as to the effect of any such failure. *Lolos* v. *Berlin,* 338 Mass. 10, 13-14 (1958). *Commonwealth* v. *Clark,* 3 Mass. App. Ct. 481, 489 (1975). Mass.R.A.P. 16(a)(4), as amended effective February 24, 1975, 367 Mass. 921.

The judgment entered in the Probate Court is to be modified by striking paragraph 1 thereof and by striking from paragraph 2 the words "with the billing of." As so modified, the judgment is affirmed.

*So ordered.*