LEWIS G. KING *vs.* CLARISSA ALLEN. October 4, 1977. 1. Even if there were merit in the defendant's contention that Mrs. Weeks lacked mental capacity to enter into the option or purchase and sale agreement — though based on the unfounded assumption that the physical infirmities from which she suffered made her mentally incompetent (compare *Meserve* v. *Jordan Marsh Co.* 340 Mass. 660, 662-668 [1960]; contrast *Sutcliffe* v. *Heatley,* 232 Mass. 231, 232-233 [1919]), and though contrary to the master's finding that she had such capacity (see *Michelson* v. *Aronson,* 4 Mass. App. Ct. 182, 190 [1976] — the contention is not properly before us, as no question about Mrs. Weeks' capacity was pleaded in the answer, raised in the defendant's preliminary or final objections to the master's report, or, for all that appears, otherwise brought to the attention of the master or the trial judge. *Id.* at 192-193. *LaRose* v. *Campbell, ante,* 840 (1977). 2. The plaintiff's exercise of the option in 1968 was not invalidated by the outstanding temporary restraining order in Seward's suit against the plaintiff and Mrs. Weeks, as the restraining order was issued at the behest of Seward rather than Mrs. Weeks or anyone claiming under her. 42 Am. Jur. 2d, Injunctions § 338 (1969). Indeed, the parties stipulated in that case that the option had been exercised, and the Supreme Judicial Court appears to have regarded its exercise as a valid one. See *Seward* v. *Weeks,* 360 Mass. 410, 411, n.1 (1971). The contention made at argument that Mr. Corey did not represent Mrs. Weeks in late 1968, thereby vitiating the plaintiff's attempted exercise of the option by notice to Corey at that time — which is likewise un-

supported by any clear finding in the master's report, and which ignores certain findings from which we would draw an inference to the opposite effect, as well as the express reference to Corey in the notice provision of the option — must fail for the further reasons that the defendant neither raised the question below by a motion to recommit for a definite finding on that point (*Dente* v. *Pink, ante,* 791 [1977]) nor argued that issue in either of her briefs on appeal (*Board of Appeals of Maynard* v. *Housing Appeals Comm. in the Dept. of Community Affairs,* 370 Mass. 64, 68 [1976]). 3. Because the stipulation in the *Seward* case, entered into (according to the record on appeal therein) but one day before the agreed-upon performance date of December 31, 1968, clearly bespoke Mrs. Weeks' recognition of the purchase and sale agreement with the plaintiff as having continued vitality, and because the plaintiff relied on that understanding in appealing from the decree entered in Seward's favor in May, 1969, Mrs. Weeks and those claiming under her (including the defendant) may not now rely on the provision of the agreement making time "of the essence": any such reliance is foreclosed either on a theory of waiver by conduct (compare *Church of God in Christ, Inc.* v. *Congregation Kehillath Jacob,* 370 Mass. 828, 833-835 [1976]) or one of estoppel (compare *Cellucci* v. *Sun Oil Co.,* 2 Mass. App. Ct. 722, 729-732 [1974], *S.C.,* 368 Mass. 811 [1975]; *Baker* v. *Coca Cola Bottling Co., ante,* 217, 219 [1977]). Absent such a provision, "equity does not require performance within the time specified" in the agreement (*Sun Oil Co.* v. *Greenblatt,* 2 Mass. App. Ct. 861, 862 [1974]), and the "impossibility" of such performance until over three years after that time proved to be only temporary. Compare *Fauci* v. *Denehy,* 332 Mass. 691, 696-697 (1955), and cases cited. The supervening increase in the value of the property did not convert that temporary impossibility into a permanent one, as the increased value would have inured to the plaintiff's benefit to the same extent if the sale had been completed in 1968 and it did not have the effect of "drastically increasing the difficulty and expense of the contemplated performance." *Mishara Constr. Co.* v. *Transit-Mixed Concrete Corp.,* 365 Mass. 122, 128 (1974), and cases cited. 4. While the master's findings as to demand and tender of performance by the plaintiff are less detailed and explicit than might have been hoped, we infer from them (a) that the letter describing the oral "demand" which Corey "sent" to Mrs. Allen (as executrix of Mrs. Weeks' will and guardian of the defendant) in January, 1972, was duly received by Mrs. Allen (see *Hobart-Farrell Plumbing & Heating Co.* v. *Klayman,* 302 Mass. 508, 509 [1939]); (b) that the communication of the demand thereby effected rendered academic any question of Corey's authority; and (c) that the "dispute" which caused the appointment of an appraiser arose from a repudiation of the agreement and excused tender of performance (see *Horgan* v. *Ogilvie,* 361 Mass. 13, 17 [1972]). 5. We perceive no abuse of discretion in the grant of specific performance. The judge was not required to deny such relief merely because of the asserted inadequacy of the agreed-upon purchase price. *Peters* v. *Wallach,* 366 Mass. 622, 628 (1975). There was no showing of laches: (a) the plaintiff promptly asserted his rights after the dissolution of the injunction in the *Seward* case, and his subsequent delay in commencing this action appears to have been caused by the defendant's conduct rather than his; and (b) there was no finding that the property taxes paid by the defend-

ant exceeded the rents she received and thereby prejudiced her. See *Blakeley* v. *Pilgrim Packing Co.,* 4 Mass. App. Ct. 19, 23 (1976). The "conflict of interest" and "speculation" attributed to the plaintiff afford no basis for the conclusion that he improperly concealed material facts from the Weekses with regard thereto or otherwise engaged in inequitable conduct: the former, for all that appears, consisted of nothing more than the performance of his ministerial duty as selectman of affixing his signature to the warrant for the town meeting at which the proposed zoning by-law was to be acted upon (see G. L. c. 39, § 10); the latter, of his election to demand performance by the defendant (whereby he, in turn, bound himself to perform) in the expectation that the land would appreciate in value. Contrast *Finnerty* v. *Reed,* 2 Mass. App. Ct. 846 (1974). 6. The judge was wrong, however, in ordering that the purchase price be increased by $2,000 and that the mortgage commence retroactively, as that amounted to the reformation of the agreement in such a way as to impose terms upon the plaintiff to which he had never assented. *Sancta Maria Hosp.* v. *Cambridge,* 369 Mass. 586, 595 (1976). Compare *Epdee Corp.* v. *Richmond,* 321 Mass. 673, 676 (1947); *Van Dusen Aircraft Supplies of New England, Inc.* v. *Massachusetts Port Authy.,* 361 Mass. 131, 142-143 (1972). The judgment is reversed, and a new judgment is to be entered in accordance with the motion therefor filed by the plaintiff.

*So ordered.*

*Richard K. Donahue* for the defendant.
*Douglas G. Moxham* for the plaintiff.