RICHARD G. DRURY, administrator, & others *vs.* GEORGE ABDALLAH & others. March 10, 1980. The plaintiffs appeal from a summary judgment for the defendants entered pursuant to Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974). We affirm. Out of the twelve claims for relief contained in the plaintiffs' complaint filed on December 11, 1973, only those claims seeking (1) dissolution of Tyngsborough Enterprises, Inc. (TEI), (2) cancellation of a real estate lease between TEI and Yankee Greyhound Racing, Inc. (Yankee), executed on February 22, 1974, and (3) "such other relief as . . . seems meet and proper" remained viable at the time of the judge's allowance on January 30, 1978, of the defendants' motion for summary judgment.

1. The plaintiffs' claim that TEI's dissolution was required was based on assertions that the corporation lacked a valid existence due to an error in the issuance of its capital stock and that its "surviving incorporators" were deadlocked. Nothing was advanced factually or legally to require a trial on any of those assertions. *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 558-561 (1976). *O'Brion, Russell & Co.* v. *LeMay*, 370 Mass. 243, 245 (1976). TEI came into existence when its articles of organization were filed with, and approved by, the State Secretary (G. L. c. 156B, § 12; *Priest* v. *Essex Hat Mfg. Co.*, 115 Mass. 380, 381 [1874]; *Whiting & Sons* v. *Barton*, 204 Mass. 169, 171-172 [1910]; Peairs, Business Corporations § 66 [1971]), and the issuance of stock was not a condition precedent to the valid and continuing existence of the corporation. *McGinty* v.

*Athol Reservoir Co.*, 155 Mass. 183, 185 (1892). *Atlantic Transp. Co.* v. *Alexander Shipping Co.*, 261 Mass. 1, 11 (1927). Moreover, the issuance of no par stock in place of the prescribed $1 par value stock appears to have been an oversight. All the original shareholders, including the plaintiff Selma Boumil and the other plaintiff's predecessor in interest, accepted the stock as issued and relied on their rights therein in conducting the corporation's business. They would now be estopped from challenging its authenticity in relation to the issue of the corporation's existence. Peairs, *supra* at § 105, and authorities cited. It is also undisputed that the stock was issued in exchange for valuable consideration by TEI's acquisition of land owned by Mary T. and George Abdallah, and, as appears from the uncontradicted Carney affidavit, that the lease between TEI and Yankee is supported by fair and adequate consideration. There is no merit to the plaintiff's claim that the corporation should be judicially dissolved, because the plaintiffs have not made it appear either that the directors are deadlocked in the management of corporate affairs (with the shareholders unable to break the deadlock) or that the shareholders are deadlocked in voting powers and have failed to elect successors to directors whose terms have expired or would have expired upon the election of their successors. G. L. c. 156B, § 99. *Rizzuto* v. *Onset Cafe, Inc.*, 330 Mass. 595, 597-598 (1953). *Donahue* v. *Rodd Electrotype Co.*, 367 Mass. 578, 591-592 (1975).

2. The short answer to the claim that TEI should have been enjoined from selling or leasing its land to Yankee "unless and until [the] transfer is approved by a majority of the disinterested shareholders" is that the plaintiffs have not shown that the majority shareholder breached his duty of strict good faith to the minority interests by selling his stock to Yankee or by engaging the corporation in the lease, or that he practiced any oppressive act sufficient to invoke the principles and remedies discussed in the *Donahue* decision, 367 Mass. at 587-589, 592-594, 598-600. His conduct falls within the large range of discretion afforded to the controlling interests in a close corporation to establish legitimate business policy for the corporation. *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 850-852 (1976). See also Hill, The Sale of Controlling Shares, 70 Harv. L. Rev. 986, 1013-1015 (1957). We do not consider the last paragraph of TEI's statement of purposes as limiting in any way the broad and general powers otherwise expressly stated in the articles of organization permitting transfer of the corporation's land. The articles and the provisions of G. L. c. 156B, § 75, conferred express authority for the transfer, and the plaintiffs' argument that the transfer was an ultra vires transaction was properly rejected. See *Calnan* v. *Guaranty Security Corp.*, 271 Mass. 533, 544 (1930), and *Bennett* v. *Florence*, 346 Mass. 707, 711 (1964) (applying the cognate provisions of G. L. c. 156, § 42).

3. We decline to accept the plaintiffs' arguments concerning an alleged improper change of corporate purposes and the alleged existence of a re-

sulting trust for the plaintiffs' benefit, because these arguments were not raised before the judge below. We see no reason not to adhere to our long-standing practice of refusing to consider, as a basis for reviewing the trial judge's rulings, arguments inspired by the loss in the trial court and urged for the first time on appeal. *King* v. *Allen*, 5 Mass. App. Ct. 868 (1977). *Russo* v. *Star Mkt. Co.*, 6 Mass. App. Ct. 892 (1978). *Rowe* v. *Rowe*, 8 Mass. App. Ct. 870 (1979).

*Judgment affirmed.*

*Arthur C. Sullivan, Jr.*, for the plaintiffs.
*John J. Regan* for the defendants.