BOSTON HOUSING AUTHORITY *vs.* ARTHUR BRUNO.

No. 01-P-292.

Suffolk. October 7, 2002. - July 3, 2003.

Present: LENK, BERRY, & McHUGH, JJ.

*Boston Housing Authority. Summary Process. Landlord and Tenant,* Eviction.

In a summary process action brought by the Boston Housing Authority (BHA), in which the BHA alleged that the tenant had violated a lease provision requiring him to forbid any household member from engaging in any drug-related activity on or near BHA property, the judge's finding, based on the record presented, that the tenant's son had moved out of the tenant's apartment and was no longer a household member at the time of the criminal event, despite the fact that he was so listed in the lease and in tenant status review forms (TSRs) submitted by the tenant to the BHA prior to the criminal event, was not clearly erroneous [488-489]; further, this court declined to rule that the mere listing of the tenant's son on the lease or TSRs gave rise, as a matter of law, to an irrebuttable presumption of the son's household member status [489-490].

This court declined to reach an argument advanced for the first time on appeal. [490-491]

SUMMARY PROCESS. Complaint filed in the Boston Division of the Housing Court Department on June 5, 2000.

The case was heard by *Jeffrey M. Winik,* J.

*Helene C. Maichle* for the plaintiff.

*Neil V. Madden* for the defendant.

BERRY, J. The Boston Housing Authority (BHA) appeals from a judgment denying it possession in a summary process action and awarding possession to the tenant, Arthur Bruno (Bruno). As grounds for the eviction, the BHA relied upon a provision in the lease, which, inter alia, forbids any household member from engaging in violent or drug-related criminal activity on or near

BHA property.[1] In similar language, the lease provides elsewhere, in § 9(B), that engagement in criminal activity by the cited class of persons, including but not limited to household members, shall be grounds for eviction of the tenant. In these respects, the provisions of the BHA lease are to be read in conjunction both with State law in G. L. c. 121B, § 32,[2] which provides for eviction from public housing only for cause, and with certain related Federal laws and regulations governing public housing.[3]

Bruno's son, Adam, was arrested within the grounds of the Old Colony housing project on February 9, 2000, and subsequently pleaded guilty to possession of heroin and possession of a dangerous weapon, mace pepper spray. Given the undisputed fact that the criminal events took place on BHA property, the centrally contested issue at the summary process trial was whether Adam was a member of Bruno's household at the time he engaged in this criminal activity. The judge found that the evidence proved that Adam was not a household member as of the date of the criminal event, was not living with his father in the housing project, and had moved out of the project on August 10, 1999, to live with his mother in Abington.

The BHA challenges the judge's findings as clearly erroneous. However, beyond this clear error challenge, a principal thrust of the BHA appeal is predicated on the theory that, since Adam was listed by Bruno as a household member on lease documents that encompassed the date of the criminal events, "as a matter of social policy," the lease documents should yield an ir-

---

[1]The particular lease provision, § 8(I), states, in pertinent part, that a tenant agrees to "[r]efrain from engaging in, and [to] forbid any member of [the tenant's] household, any guest, or any other person under [the tenant's] control from engaging in any criminal or illegal activity including: . . . [a] drug-related criminal activity on or near BHA property[.]"

[2]General Laws c. 121B, § 32, provides as follows: "The tenancy of a tenant of a housing authority shall not be terminated without cause and without reasons therefor given to said tenant in writing prior to such housing authority filing an action for summary process or seeking an injunction . . . ."

[3]The Federal regulations which govern public housing agencies (PHAs) provide that the PHA may terminate a tenancy in circumstances where the tenant, his household member, a guest or other person under the tenant's control engages in "[a]ny criminal activity that threatens the health and safety or the right to peaceful enjoyment of the PHA's . . . premises by other residents or employees of the PHA, or . . . [a]ny drug-related criminal activity on or near such premises." 24 C.F.R. § 966.4(f)(12)(i)(A)-(B) (2000).

rebuttable evidentiary presumption that Adam was a household member. We think not. Based on our review of the record, given the preponderance of countervailing evidence of Adam's non-household member status, the judge's findings were not clearly erroneous. Furthermore, we do not accept the irrebuttable presumption theory advanced by the BHA. The judgment is affirmed.

1. *Factual and procedural background.* For the past twenty-one years, Bruno has been a BHA public housing tenant. Since 1992, he has resided in the Old Colony project. In 1995, Bruno executed a standard form BHA lease that had been revised that same year. This 1995 lease remained in effect through February 9, 2000, the date of the subject criminal event. Section 20 of the lease provided in pertinent part that, "[e]xcept as otherwise provided by a written Lease Addendum, the individuals listed below shall be the only persons authorized to occupy the Apartment with Resident and shall comprise the Resident's household."

At the time the 1995 lease was signed, Bruno listed himself as head of the household and his three children, Adam Bruno, Arthur Pishkin, and Derek Pishkin, as household members.[4] In connection with the composition of the household members, on an annual basis, BHA tenants were required to complete a Tenant Status Review form (TSR), which was to state changes in household members, memorialize the then existing composition of the household, and report any financial changes in a tenant's household income. See note 8, *infra.*

Notwithstanding having listed Adam as a continuing household member in his TSR form filed in June, 1999 (which extended through June, 2000) at trial, Bruno sought to prove that Adam had moved out of the apartment as of August 10, 1999, and was living with his mother in Abington. As to his failure to delete Adam as a household member, Bruno testified, "I didn't think it was necessary," adding that, "I didn't want to take him off anyway because in case he ever did want to come

---

[4]General Laws c. 121B, § 32B, in pertinent part, defines household as follows:

" 'Tenant household,' an individual, family unit, or other group living in a public housing development or a subsidized housing development, as reported to the landlord of the development at initial occupancy or thereafter."

home." Bruno acknowledged that "in retrospect my failure to do so was a serious mistake." To support his testimony that Adam had moved, and to rebut the listing of Adam as a household member, Bruno submitted Adam's 1999 W-2 wage form and earning summary which listed Adam's address in the town of Abington.

The judge found credible Bruno's testimony that Adam had moved out.

> "I had the opportunity to observe Bruno during the trial and gave careful consideration to his testimony. I conclude that Bruno is a credible witness and I accept as true his testimony that Adam Bruno had vacated the apartment and was not living with Bruno as a member of his household between August 1999 and September 2000."[5,6]

The judge cited the W-2 wage form as corroborative evidence, noting that the W-2 was mailed to Adam in Abington, was dated on or about January 30, 2000, and, therefore, was "prepared in temporal proximity to *and before* the February 9, 2000, incident" (emphasis in original). The judge also observed "the absence of any eye-witness evidence that contradicts Bruno's testimony" that Adam was not a household member at the time of the arrest. Based on our review of the record, we conclude this finding that Bruno was not a household member is not clearly erroneous.

2. *The BHA irrebuttable presumption theory.* Beyond the clear error challenge, the BHA advances on another tack. The BHA argues that, in light of the TSR filings, Bruno's proffered evidence concerning Adam's move from the household should have been excluded. Alternatively, the BHA argues that, notwithstanding such admission, the weight of the countervailing evidence that Adam was not living with Bruno was meaningless because the mere presence of Adam's name as a household member on the 1995 lease and the TSRs subsequently filed by Bruno should

---

[5]Because Adam ceased being a household member as of August, 1999, Adam could not be relisted as a member of the Bruno household and live in the apartment without approval of the BHA. Accordingly, the court ordered that Bruno "promptly remove Adam Bruno's name from the lease." This was ordered because Adam had moved back into Bruno's household some three months prior to the trial.

[6]Bruno represented himself pro se at trial.

have been accepted by the court as conclusive, and the irrebutt-able presumption of Adam's household member status should have stood firm. This irrebuttable presumption, the BHA suggests, accords with social policy.

We have doubts whether such an irrebuttable presumption may be found hidden within the lease contract, or lurking within the statutory and regulatory provisions that govern this case. The laws and regulations say no such thing, and social policy, even if worthy and of laudable purpose, cannot serve as a canon for statutory or regulatory construction.[7] As to the subsequent TSRs, which Bruno signed, it appears that the principal purposes of the TSR were to determine rent value, to ensure that an apartment size was appropriate for the number of household members listed, and to prevent apartment overcrowding by unlisted family members, guests or friends.[8]

3. *The nonpreserved guest appellate theory.* Lastly, the BHA argues that, even if Adam was not a household member, he should have been considered a guest, still leaving Bruno subject to eviction because the latter should have foreseen his son's

---

[7]In a supplement to its brief, the BHA filed a pre-oral argument letter citing the United States Supreme Court decision in *Department of Housing & Urban Dev.* v. *Rucker*, 535 U.S. 125 (2002) (*Rucker*). The *Rucker* case upheld against a constitutional attack that part of the 1988 Federal Anti-Drug Abuse Act codified in 42 U.S.C. § 1437d(l)(6). This statute (similar to the Federal regulation, 24 C.F.R. § 966.4[f][12][i][A]-[B] [2000], cited in note 3, *supra*) states that "[e]ach public housing agency shall utilize leases . . . provid[ing] that . . . any drug-related criminal activity on or off [Federally assisted low-income housing] premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy." 42 U.S.C. § 1437d(l)(6), cited in *Rucker*, *supra* at 130. The Supreme Court held that § 1437d(l)(6) — even as construed to permit eviction in circumstances where the tenant neither knew, nor had reason to know, of the drug-related act by any person related to the tenant's status — did not violate due process property rights. The BHA argues that the *Rucker* analysis upholding no-fault evictions of innocent tenants under this statute, *Rucker*, *supra* at 134-135, adds force to its argument that Bruno should have been evicted by the Housing Court judge, even if Bruno did not know of, and could not reasonably have known of and foreseen, Adam's criminal act. We decline to reach this BHA contention. Neither *Rucker* nor § 1437d(l)(6), which has been in effect since 1988, retroactively changes the theory of proof and evidence introduced by the BHA at trial (see part 3, *infra*); nor does the Federal statute validate the irrebuttable presumption as a matter of State law for which the BHA so heavily contends in this appeal.

[8]Section 3 of the lease provides that tenancies are to be reviewed at least an-

criminal propensities. We decline to reach this theory, which the BHA newly advances on appeal.[9] The case, as tried by the BHA, was directed to the question of Adam's status as a household member, not as a guest. A party may not present one theory of proof at trial and then desert that theory for a different one on appeal. *Russo* v. *Star Market Co., Inc.*, 6 Mass. App. Ct. 875, 875 (1978). *Drury* v. *Abdallah*, 9 Mass. App. Ct. 865, 866-867 (1980). *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 341 (1990). The guest and foreseeability theories were not preserved and are waived.[10]

*Judgment affirmed.*

---

nually by the BHA to redetermine and adjust the monthly rent, to review the appropriateness of the apartment size in relation to the number of household members, and to verify continued eligibility for public housing. The TSRs are used in connection with this recertification process. Section 3 of the lease also requires the tenant, within seven days, to report any change in household composition or income to the BHA.

[9]We note that notwithstanding its reference to Mass.R.Civ.P. 15, 365 Mass. 761 (1974), the BHA did not file a motion to amend the complaint to conform with what the BHA now says was guest-related evidence: specifically, that Bruno admitted that Adam had been in the apartment on the night in question. We are not persuaded that the judge's one brief (and, it appears, inadvertent) reference at the beginning of trial to potential guest status preserves the BHA's position. To the contrary, the judge's final decision reflects that he understood, and acted on, the BHA's complaint and its theory of the case as predicated on household member status for Adam.

[10]In light of our determination, we need not reach Bruno's argument that this case falls within the "limited protection against termination when special circumstances . . . indicate that the tenant could not have foreseen the violence [or drug activity] or taken steps to prevent it." *Spence* v. *Gormley*, 387 Mass. 258, 261 (1982) (*Spence*). Accord *Boston Housing Authy.* v. *Bell*, 428 Mass. 108 (1998). "[T]he 'cause' requirement of [G. L. c. 121B,] § 32 . . . mean[s] that a tenant should not be evicted if special circumstances negate the inference that she could have averted the lease violation. In other words, if the tenant can show that she could not have foreseen and prevented her son's violence [or criminal activity], there is no 'cause' to evict her within § 32." *Spence, supra* at 265. As to the lack of foreseeability of Adam's drug activity on this night, Bruno points out that Adam, in a random manner, stopped by on his way home from work and then, as far as Bruno knew, left to return to Abington. Furthermore, Bruno was not aware that Adam was a heroin user. The BHA, in turn, argues that Adam had been involved in a prior drinking binge and that, during the incident, Adam had been taken to a hospital and was tested for drugs. The results, however, were negative. The BHA claimed a small quantity of marijuana was seized that night, but it is not clear if Bruno knew that. In any event, BHA counsel expressly disavowed reliance on this prior incident in connection with the factual basis underlying this complaint for eviction.