S. D. Shaw & Sons, Inc. *vs.* Joseph Rugo, Inc.

Suffolk.   December 8, 1961. — February 14, 1962.

Present: Wilkins, C.J., Spalding, Williams, Whittemore, & Spiegel, JJ.

*Contract,* Building contract, Subcontract.  *Equity Pleading and Practice,* Master: exceptions to report, summary of evidence, report of evidence, recommittal.  *Evidence,* Opinion.

Exceptions to a master's report relating to his failure to include certain exhibits in his report or to make additional findings raised no questions of law apparent on the face of the report and had no standing.   [639]

At the trial of a suit in equity against the general contractor on a building project by a subcontractor bound to perform all heating and ventilating

work in accordance with the specifications of the general contract, which included placement of pipes covered with insulating material in a trench prepared by the defendant, there was no error in the exclusion of the opinion of the engineer who prepared the specifications as to whether backfilling the trench was included by the specifications in the work to be done by the plaintiff. [639]

There was no error in the denial of a motion to recommit the report of a master for a summary of evidence in connection with an objection not raising a question of law depending on evidence not reported. [639–640]

Recommittal to a master for a report of evidence lies in the discretion of the trial court. [640]

Under a subcontract for performance of all the heating and ventilating work on a building project in accordance with the "Heating and Ventilating" section of the specifications of the general contract requiring the subcontractor to install pipes in a trench prepared by the general contractor and to cover them with insulation, providing that "Trenches shall be filled and tamped by hand at least 12-in. above insulation [and] above that machines or hand backfill shall be used," and describing "Excavation and Backfill" as work not included under "Heating and Ventilating," with a reference to a different section of the specifications entitled "Preparation of Site, Earthwork and Cleanup" and dealing with all work in "site preparation, excavation, backfill, fill, grading, trenching for utilities," the subcontractor was obliged to backfill and tamp the trench up to twelve inches above the insulation. [637, 640]

BILL IN EQUITY, filed in the Superior Court on July 14, 1960.

The suit was heard by *Barron, J.,* on a master's report.

*Irvin M. Davis,* (*Richard H. Davis* with him,) for the plaintiff.

*Bernard S. Kaplan,* (*Harry P. Haveles* with him,) for the defendant.

SPIEGEL, J. This is a suit for a declaratory decree under G. L. c. 231A. The plaintiff, S. D. Shaw & Sons, Inc. (hereinafter called Shaw), under a written subcontract with the defendant, Joseph Rugo, Inc. (hereinafter called Rugo), was to perform certain work prescribed by the specifications of a general contract entered into between Rugo and the Massachusetts Port Authority. Shaw seeks a determination of the rights and duties of the parties regarding compliance with certain provisions of the specifications.[1]

---

[1] Another issue raised by Shaw with reference to certain payments under the subcontract was settled by the parties after the first hearing before the master.

The case was referred to a master who filed a report in which he made findings of fact "[u]pon all the evidence" and reported a question of law. The evidence was not reported. Shaw filed eighteen objections to the master's report which under Rule 90 of the Superior Court (1954) are treated as exceptions.

Shaw filed a motion to recommit the master's report and Rugo moved to overrule Shaw's exceptions and to confirm the report of the master. The judge denied Shaw's motion and allowed the motion of Rugo. An interlocutory decree was entered overruling Shaw's exceptions and confirming the master's report. A final decree was entered in favor of Rugo. Shaw appealed from the interlocutory and final decrees.

Rugo is the general contractor for the construction of the Eastern Airline hangar at the Logan Airport, East Boston, Massachusetts. Shaw entered into a subcontract with Rugo for the performance of all heating and ventilating work as specified in § 24 of the specifications to the general contract. As part of its work, Shaw was required to place two pipes carrying heating lines in a trench prepared by Rugo and to cover the pipes with insulating material. The specifications applying to "Heating and Ventilating" provide in part at § 24-42.14 as follows: "Trenches shall be filled and tamped by hand at least 12-in. above insulation, above that machines or hand backfill shall be used." Section 24-03 describes work not included under "Heating and Ventilating" and states in part: "1. Excavation and Backfilling Section 2." Section 2 of the specifications, entitled "Preparation of Site, Earthwork, and Cleanup," provides in part at § 2-02 as follows: "1. The scope of work under this section, without limiting the generality thereof, consists of furnishing all labor, equipment and materials, and performing all operations in connection with [the] site preparation, excavation, backfill, fill, grading, trenching for utilities . . . in strict accordance with this section of the specifications and the applicable drawings."

The subcontract between Rugo and Shaw also contains the following provision: "The Sub-Contractor agrees . . .

to be bound by the decision of the Contractor as to the construction and meaning of the plans and Specifications, such decision to be final.'' By letter of June 27, 1960, Rugo informed Shaw that under the specifications it was the responsibility of the subcontractor to fill the trench at least twelve inches above the insulation.

The master found that ''. . . the work of backfill and fill, insofar as the subject matter is covered by Section 2 of the Specifications, is not included in the work to be done by the subcontractor for heating and ventilating under Section 24 of said Specifications''; that, '' [i]nsofar as it presents a question of fact, . . . the question of whose responsibility and obligation it is to do the work of filling the first twelve (12) inches above the insulation, involves the construction and meaning of the Specifications of the General Contract''; that ''. . . both Shaw and Rugo felt that there was an honest dispute upon this point on the construction and meaning of the Specifications, and their respective attitudes have at all times been reasonable''; and that, '' [i]nsofar as it involves a question of fact, . . . the construction and meaning placed upon the specifications by Rugo as set forth in its . . . letter of June 27, 1960, is reasonable.''

The final decree provides in material part as follows: ''4. That the plaintiff, its agents or servants, are bound to fill and tamp by hand at least twelve (12) inches above insulation as set forth in section 24—42.14 of the general specifications. 5. That the section of the specifications designated 'section 2' has no application to the plaintiff. 6. That in addition to the subcontract between plaintiff and defendant, and in addition to section 24 of the specifications, the plaintiff, its agents or servants, are bound by their filed subbid, designating section 24 of the specifications. 7. That the defendant, its agents or servants, have correctly interpreted article 2 of the subcontract between plaintiff and defendant whereby the defendant has the authority to make a final decision as to the construction and meaning of the plans and specifications wherein the defendant has so reasonably interpreted the specifications, that

the plaintiff is required under section 24–42.14 of the said specifications, to fill and tamp by hand at least twelve inches above insulation.''

A number of Shaw's objections are repetitious. Many relate to the failure of the master to include in or attach to his report certain exhibits. Others request the master to make additional findings. None of the objections, except those relating to the exclusion of evidence, raises any question of law apparent on the face of the report, and they are, therefore, without standing. *Minot* v. *Minot,* 319 Mass. 253, 258–259. *Shaw* v. *United Cape Cod Cranberry Co.* 332 Mass. 675, 678. *New England Overall Co. Inc.* v. *Woltmann, ante,* 69, 74.

The objections concerning the exclusion of certain testimony by one Kimball, called as a witness by Shaw, involve the question of law reported by the master.

Kimball was the senior engineer for the firm which prepared the plans and specifications relating to heating and ventilating. He was asked by Shaw to give his opinion whether ''the work of putting soil in this trench'' was included in § 2 or § 24 of the specifications. The master sustained an objection to the question on the ground that the opinion ''involved a legal conclusion and construction of the plans and specifications.''

There was no error. The question called for an opinion as to a matter of law, *Tri-City Concrete Co. Inc.* v. *A. L. A. Constr. Co., ante,* 425, 427, and was properly excluded. *McKay* v. *Morgan Memorial Co-op. Indus. & Stores, Inc.* 272 Mass. 121, 126. *Bachinsky* v. *Rogers,* 273 Mass. 381, 384–385.

Shaw's motion to recommit the master's report includes a request to ''attach to his report'' certain documents which were introduced in evidence at the hearings before the master. The pertinent parts of the exhibits are included in the master's report. The remaining paragraphs of the motion request summaries of evidence. They are not based on objections which raise questions of law which depend on evidence not reported as is required by Rule 90

of the Superior Court (1954). *Minot* v. *Minot, supra,* 259. They were merely attempts to bring before the court all the evidence on the issue. *Buckley & Scott Util. Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498, 508. Whether the report should be recommitted for such purpose is discretionary with the trial judge. *Epstein* v. *Epstein,* 287 Mass. 248, 254. *Macera* v. *Mancini,* 327 Mass. 616, 620. There was no abuse of discretion.

It was not error to deny Shaw's motion to recommit and to enter an interlocutory decree overruling Shaw's exceptions and confirming the master's report.

Shaw is bound by the terms of its subbid and the subcontract to perform the work prescribed in § 24 of the specifications. Section 24–42.14 provides that trenches are to be filled and tamped by hand at least twelve inches above the insulation. Section 24–03.1 describes the work not required to be done under § 24 and includes ''Excavation and Backfilling.'' The master set out the pertinent portions of the sections in his report and found that a determination as to the responsibility for filling and tamping the prescribed twelve inches involved the construction of those provisions. The judge made an express determination that Shaw is responsible for filling and tamping under § 24–42.14.

Shaw contends that it is not required to perform the work prescribed in § 24–42.14. Such an interpretation of that provision would render it meaningless. The sections in question are to be construed, if possible, so as to give a reasonable effect to each. *King Features Syndicate, Inc.* v. *Cape Cod Bdcst. Co. Inc.* 317 Mass. 652, 654. ''An interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable.'' *Sherman* v. *Employers' Liab. Assur. Corp. Ltd., ante,* 354, 357, and cases cited.

The judge was correct in determining that Shaw is responsible for filling and tamping by hand the first twelve inches of the trenches above the insulation.

The interlocutory and final decrees are affirmed.

*So ordered.*