CHARLES L. HORGAN vs. GORDON H. OGILVIE, executor,
& another.

Middlesex.   December 6, 1971. — January 13, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Contract,* Option, For sale of real estate.  *Notice.  Equity Jurisdiction,*
Specific performance.  *Words,* "One month's notice."

A lessee who had obtained from the owners an option to purchase the
leased premises free of encumbrances upon one month's notice and
payment of $1500, less rent already paid, was entitled to specific per-
formance where it appeared that the surviving joint owner had
received sufficient and seasonable notice, that impossibility of
obtaining a discharge of mortgage encumbrances had not been
established, that friendly purposes of the option made a $5000
actual property value irrelevant, that a strict tender would have
been futile, and that the lessee made reasonable efforts to comply
with the option terms.  [16–17]

An option providing that a lessee of certain premises should, "before
the first day of any month, give to the lessor, his heirs or assigns,
one month's notice of his desire to purchase the fee simple of said
premises" was reasonably to be interpreted to mean that the "one
month's notice" was to be given prior to the first day of any
month and was to expire at the end of that month.  [14, 16]

PETITION IN EQUITY filed in the Probate Court for the
county of Middlesex on November 18, 1969.

The suit was heard by *Hays,* J.

*Charles P. Lessa* for the petitioner.

*Joseph M. Cohen* for the respondents.

CUTTER, J.   Horgan by petition in equity in the Pro-
bate Court seeks against Ogilvie, as executor of the will
of Howard M. Lindley, and Mrs. Lindley specific per-
formance of an alleged agreement, made by Lindley and
Mrs. Lindley, to convey to him real estate (locus) in
Ayer.   The probate judge entered a decree dismissing
the petition.   Horgan appealed.   The evidence is re-
ported.   The facts, except as otherwise indicated, are
based upon the judge's report of material facts.

For over twenty-five years before 1967 Horgan had
been a friend of Lindley.   The evidence shows he had

worked for Lindley at Fort Devens at one time.   In
1967 Horgan began supplying Lindley with fuel oil.
Horgan, according to the testimony, then had no stor-
age facilities in Ayer and was hauling oil from Lowell.
Lindley talked to Horgan about selling the locus to him
for $1,500.   On the basis of a memorandum prepared
by Lindley, Mr. James L. Haley, an attorney (after talk-
ing with both Lindley and Horgan), prepared a lease-
option agreement (a copy of which was attached to the
petition).   Although the probate judge points out that
this agreement, dated October 31, 1967 (the 1967 agree-
ment), was never introduced in evidence, the reported
evidence shows no dispute concerning its existence or
contents.   We treat it as before us.   The 1967 agree-
ment provided for a lease of the locus to Horgan for
two years for $200 a year, with permission to him to
install oil tanks above or below ground level and to erect
structures.   It also contained the option set out in the
margin.[1]   The locus was owned by the Lindleys as ten-
ants by the entirety, and at the time of trial, Mrs.
Lindley was sole owner.   Lindley had died on May
24, 1968.

Horgan and Lindley had an agreement that the rent
would be paid in fuel oil to be delivered to Lindley's
house.   This was done up to and after Lindley's death
until and beyond October 31, 1969.   It was not shown
that Mrs. Lindley knew of this arrangement while
Lindley was alive.

In January, 1968, Horgan installed an oil tank on
the locus.   Later he moved three more oil tanks to the

---

[1] The option reads (emphasis supplied), [I]f the Lessee . . . shall,
*before the first day of any month,* give to the Lessor, his heirs or as-
signs, one month's notice of his desire to purchase the fee simple of
said premises . . . hereby demised, then the Lessor, his heirs or assigns,
shall on expiration of said notice and upon payment by the Lessee of
the sum of . . . $1500 . . . less the rent already paid by the Lessee . . .
convey by a good and sufficient Quitclaim Deed the said premises . . .
unto the Lessee . . . in fee simple, *free from all incumbrances,* including
a mortgage presently outstanding in favor of the Concord Coopera-
tive Bank, and Hilja S. Lindley, wife of the Lessor, agrees to execute
any and all documents that may become necessary in carrying out the
intentions of this instrument."

locus, but it is not clear whether these three tanks were moved prior to Lindley's death.

About September 15, 1969, Horgan told Mrs. Lindley that he intended to purchase the locus. He said nothing about a date for carrying out the purchase nor anything about rent payment. The judge found that Mrs. Lindley did not understand that Horgan was giving her a thirty day notice of his intention to exercise an option to purchase the locus. We are of opinion that she reasonably should have understood this and we regard her actual understanding as immaterial.

On October 30, 1969, Horgan went to the office of the Concord Coöperative Bank and talked with Ogilvie, president of the bank. Horgan had with him a check drawn by the Union Oil Company, payable to Horgan for $1,200, and informed Ogilvie that he desired to exercise the option to purchase the locus and was prepared to complete the transaction. Ogilvie called in Miss Eleanor Daly, the bank's attorney and also attorney for Lindley's estate. Horgan was informed at the time of the conference that she was so acting.

Horgan demanded that the estate perform the option agreement. Ogilvie replied that Horgan had not complied with the requirement as to notice. Horgan then went to see Mrs. Lindley. He asked her if she would sign a paper saying that he had talked with her in the preceding September. She said she would. Horgan then had his wife write up a statement which Mrs. Lindley signed. On this occasion Horgan gave Mrs. Lindley his check for $15.70 saying he had calculated the cost of the oil which he had supplied and that it had fallen short of the $400 rent by the amount of $15.70 and he wanted to pay that sum. He asked if she wanted the check cashed and, when she said she did, Horgan gave her $15.70 in cash. She indorsed the check. The judge found that Mrs. Lindley on October 30, 1969, "had no adequate understanding of the" 1967 agreement. "[S]he knew only that her late husband had

made some arrangement to sell the locus . . . to . . . [Horgan]."

On October 31, 1967, the locus was subject to a mortgage dated February 15, 1966, in the face amount of $19,700 running to the Concord Coöperative Bank. There was also another mortgage of the locus to the same bank recorded on May 9, 1969. There was no evidence offered as to the face amount of this mortgage. A balance of some amount was due to the bank on October 30, 1969. The evidence shows that the locus covered about three-quarters of an acre and that the total tract subject to the mortgages was twenty-four acres. The judge found that the fair value of the locus on October 31, 1967, was $5,000. No offer was made by Horgan, either before or at the hearing, to accept a deed from Mrs. Lindley subject to the existing mortgages.

1. The oral notice, given on September 15, 1969, as acknowledged on October 30, 1969, in a writing signed by Mrs. Lindley, of Horgan's intention to exercise the option was sufficient and seasonable. The reasonable interpretation of the option (see fn. 1, *supra*), was that the "one month's notice" was to be given prior to the first day of any month and was to expire at the end of that month.

2. The option, unambiguous (cf. *Wright* v. *Commonwealth*, 351 Mass. 666, 672–673) in this respect, in terms required Lindley to convey free of all encumbrances, including the particular mortgage (referred to in the option) to the Concord Coöperative Bank. It was not established that it was impossible for Mrs. Lindley to obtain a partial release of the bank mortgages, of which Ogilvie, the executor of her husband's will, was president, to enable her to make the conveyance to Horgan. She is bound by the 1967 agreement which she signed and which the evidence shows she knew about from the beginning, at least in a general way. The Lindleys obviously knew that Horgan would incur expense and change his position in reliance on the option. Now, at

least, the bank through Ogilvie is informed of the equities of this situation. We perceive no hardship or impossibility which should bring the case within the principle mentioned in *Freedman* v. *Walsh,* 331 Mass. 401, 403.

3. It is immaterial that the locus was worth $5,000 on October 31, 1967, and was to be conveyed for $1,500. Horgan had effected improvements during the two year period after the 1967 agreement. In any event, the reported testimony, as we read it, shows that Lindley was trying to help his old friend Horgan establish himself, and the transaction was wholly a friendly one. There is no indication in the evidence that Horgan overreached Lindley and his wife. The fact that the bank's attorney was also acting for Mrs. Lindley and Lindley's estate warranted Horgan in going to Ogilvie to obtain conveyance late in October. Any failure of Horgan to comply strictly with the terms of the option should not bar equitable relief in the circumstances in view of his reasonable efforts to comply, and where there was substantial indication that tender, no matter how made, would be futile. See *Leigh* v. *Rule,* 331 Mass. 664, 668–669; *Mayer* v. *Boston Metropolitan Airport, Inc.* 355 Mass. 344, 353–354. Cf. *Hurd* v. *Cormier,* 358 Mass. 736, 739–740.

4. On the subsidiary facts found by the judge, read in the light of the reported testimony, we conclude specific performance should be ordered. We perceive "no substantial or adequate equitable basis for discretionary denial of specific performance." See *Raynor* v. *Russell,* 353 Mass. 366, 367; *Allen* v. *Rakes,* 359 Mass. 1, 5–6.

5. The decree is reversed. A new decree is to be entered ordering Mrs. Lindley, upon payment of the balance of the purchase price, to convey the locus to Horgan free of all encumbrances. Horgan is to have costs of appeal.

*So ordered.*