**In re IONOSPHERE CLUBS, INC.,
Eastern Airlines, Inc., Debtors.**

**Bankruptcy Nos. 89 B 10448 (BRL), 89
B 10449 (BRL).**

United States Bankruptcy Court,
S.D. New York.

March 14, 1990.

Hill & Barlow by Michael S. Greco, Bruce E. Falby and E. Randolph Tucker, Boston, Mass., Sp. Counsel, for debtors.

Weil, Gotshal & Manges by Laura M. Sillins, New York City, for debtors.

Ropes & Gray by John L. Bartenstein and Charles P. Normandin, Boston, Mass., for Mass. Port Authority.

## MEMORANDUM DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT ON MOTION FOR RELIEF FROM THE AUTOMATIC STAY

BURTON R. LIFLAND, Chief Judge.

### RELIEF REQUESTED

Massachusetts Port Authority ("Massport") asks this Court to grant its summary judgment motion which arises out of its request for relief from the automatic stay imposed by Bankruptcy Code (the "Code") § 362(a). Specifically, Massport seeks an order declaring that the lease agreement (the "Lease") between Massport and Eastern Airlines, Inc. (the "Debtors" or "Eastern") expired by its terms on May 31, 1986, and that Eastern failed to exercise an option agreement dated October 9, 1959 (the "Option") to renew the Lease for an additional five (5) years and, therefore, that the Lease is not property of the estate. Massport further requests an order that requires Eastern to pay fair market rental value for use and occupation from and after the filing of the Chapter 11 case as a cost of administration, and for this Court to determine the amount of such use and occupation.[1]

In contrast, Eastern has cross-moved for summary judgment in its favor. Eastern seeks an order declaring that the Option was effectively exercised or, in the alternative, that Eastern should be granted equitable relief giving the estate an interest in the leased premises.

### BACKGROUND

On March 9, 1989 (the "Filing Date") Ionosphere Clubs, Inc. and Eastern filed for reorganization under Chapter 11 of the Code and were continued in the management, operation and possession of their businesses and properties as debtors-in-possession pursuant to §§ 1107 and 1108 of the Code. These cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Orders of this Court.

The undisputed facts relevant to this controversy as described in the various Statements and Counterstatements filed pursuant to Rule 13(h) of the Local Bankruptcy Rules (the "13(h) Statements")[2] submitted

---

1. In light of the fact that neither party has submitted any pleading going to the issue of use and occupation, this Court is unable to determine the issue at this time.

2. Local Bankruptcy Rule 13(h) provides that upon a motion for summary judgment the moving party is required to submit "a separate, short and concise statement of the material facts as to which the moving party contends there is no

in conjunction with the cross-motions for summary judgment are as follows:

On or about April 17, 1958, Eastern and the Commonwealth of Massachusetts State Airport Management Board entered into a twenty-five (25) year lease agreement for a hangar and apron areas at Logan International Airport in Boston. Prior to the commencement of the Lease term, Massport succeeded to the rights and obligations of the Commonwealth of Massachusetts under the Lease. The Lease provided for Massport to construct a hangar and apron areas at a maximum cost not to exceed $3,500,000 and for Eastern to pay as rent during the lease term: (1) the complete cost of construction of the hangar and associated premises (not to exceed $3,500,000) amortized over the term of the lease; (2) interest on the unamortized balance; and (3) ground rent of $.06 per square foot per annum. The lowest bid to construct the facility specified a price greater than the expenditure called for in the Lease and because Massport did not have the extra funds available, Eastern agreed to provide the funding for construction costs in excess of $3,500,000 on the condition that it be given an irrevocable option to extend the Lease term for an additional five years. On or about October 9, 1959, Eastern and Massport entered into an agreement amending the Lease (the "Option") and as of March 20, 1961, Eastern had paid Massport $500,000 to fund construction costs to completion in excess of the $3,500,000 specified in the Lease. The Option granted Eastern an option:

to lease the Complete Hangar for a period of five (5) years commencing upon the expiration of the Present Lease, said Lease to be upon the same terms and conditions as the Present Lease except that the rental to be paid by Eastern to the Authority shall be at a rate to be negotiated at least six (6) months prior to the expiration of the Present Lease but

in no event shall said rate be in excess of $120,000 per year.

The following procedure was specified for exercising the Option:

Said option may be exercised by written notice addressed to the Authority at its principal office in Boston and delivered or sent first-class, registered or certified mail at least one (1) month prior to the expiration of the term of the Present Lease.

The term of the Lease commenced on June 1, 1961 and was scheduled to expire on May 31, 1986. Eastern asserts that during the term of the Lease it spent up to $500,000 on repairs or improvements to the hangar.

In May, 1986, Philip B. Berger, an Eastern Properties Representative, sent a certified letter to William Coleman, Director of Massport, attempting to exercise the Option. Although Mr. Berger's letter was dated May 1, 1986, it was metered in Eastern's mailroom on May 6, hand-delivered to the United States Post Office in Miami on May 7, and received by Massport on May 9. Eastern has alleged that one of their representatives orally exercised the Option on March 26, 1986, and verbally confirmed this in a telephone conversation on April 30, 1986. Without conceding their accuracy, Massport disputes the conclusions to be drawn from these allegations.

Massport asserts that it notified Eastern by letter dated June 3, 1986, that the Option had not been timely exercised. Eastern disagrees with Massport's assertion characterizing the letter. Thereafter, the parties met on several occasions and exchanged numerous letters in an effort to resolve their differences over the matter, but were unable to do so. On or about February 2, 1989, Massport filed an action in the Massachusetts Superior Court seeking a declaratory judgement that Eastern had not properly exercised its option to renew the Lease and for damages repre-

---

genuine issue to be tried." The party opposing a motion for summary judgment must include "a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried."

Rule 13(h) further provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."

senting back rent. The Superior Court action was stayed by the filing of this Chapter 11 case on March 9, 1989.

## ISSUES

I. Whether Eastern validly exercised its Option.

II. If the Option was not validly exercised, whether Massport waived its right to rely on that failure.

III. If Eastern had not validly exercised its Option, whether Eastern is nevertheless entitled to equitable relief.

## DISCUSSION

Under 28 U.S.C. §§ 157 and 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.) dated July 10, 1984, this Court has jurisdiction over Massport's Motion and Eastern's Cross-Motion. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

## SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Federal Rules"), as adopted in bankruptcy proceedings under Bankruptcy Rule 7056, summary judgment must be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Federal Rule 56(c). "Summary judgment ... is an extraordinary remedy which should be granted with great caution...." *In re Overmyer*, 52 B.R. 111, 114 (Bankr.S.D.N.Y.) *motion to amend denied*, 53 B.R. 952 (S.D.N.Y.1985); *Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238, 244 (2d Cir.1984). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Federal Rule 1). Summary judgment is appropriate where the movant demonstrates that there are no genuine issues of material fact to be tried. *In re O.P.M. Leasing Services, Inc.*, 46 B.R. 661, 665 (Bankr.S.D.N.Y. 1985). Thus, "only dispute over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Ambiguities must be resolved and all reasonable inferences must be drawn in favor of the party against whom summary judgment is sought. *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 10–11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Schiess–Froriep Corp. v. S.S. Finnsailor*, 574 F.2d 123, 126 (2d Cir.1978).

The court must go beyond the mere pleadings of the parties, by examining all of the admissible evidence set forth in the papers and considering all inferences reasonably deducible from such evidence, in determining whether there are any genuine issues of material fact which would necessitate a trial. *In re Esposito*, 44 B.R. 817, 821 (Bankr.S.D.N.Y.1984); *Schwabenbauer v. Board of Education*, 667 F.2d 305, 313 (2d Cir.1981); *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 554 (2d Cir.1977); *United States v. Matheson*, 532 F.2d 809, 813 (2d Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976).

The submissions of the parties establish a sufficient record to enable this Court to grant the essential relief requested in Massport's motion for summary judgment.

## I. EXERCISE OF THE OPTION

Paragraph 6 of the Option incorporates by reference Article XIX(f) of the Lease and provides: "This Lease shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts."[3]

---

**3.** The Supreme Court has held that in actions on contracts made and to be performed in states other than the forum state, the rights and liabilities of the parties shall be established following a determination as to whether the laws of the forum state or the other state shall apply. This

The Court of Appeals for the First Circuit has recently summarized the law of Massachusetts concerning the exercise of options as follows:

Under Massachusetts law: "An option, being unilateral in its nature, and likely to be exercised when advantageous to the holder of the option and perhaps disadvantageous to the person subject to it, must be exercised, if it is exercised at all, by turning corners squarely." *The Tristram's Group, Inc. v. Morrow,* [22 Mass. App.Ct. 980], 496 N.E.2d 176 (Mass.App. Ct.1986). *See also Roberts–Neustadter Furs, Inc. v. Simon,* [17 Mass.App.Ct. 262], 457 N.E.2d 668, 670–71 (Mass.App. Ct.1983) *rev. denied* [391 Mass. 1102], 459 N.E.2d 826 (1984) (option must be exercised strictly in accord with its terms); *Loitherstein v. I.B.M. Corp.,* [11 Mass.App.Ct. 91], 413 N.E.2d 1146, 1149 (Mass.App.Ct.1980) (one who stumbles in exercising option not entitled to equitable relief); *Westinghouse Broadcasting v. New England Patriots Football Club, Inc.,* [10 Mass.App.Ct. 70], 406 N.E.2d 399, 401 (Mass.App.Ct.1980) (option conditions must be rigorously complied with).

*McDonald's Corporation v. Lebow Realty Trust ("McDonald's"),* 888 F.2d 912, 914 (1st Cir.1989). The language of an option agreement determines the manner in which the option can be exercised. *Lewis v. Chase,* 23 Mass.App. 673, 676, 505 N.E.2d 211 (1987) ("Where the option requires the giving of notice to the lessor, effective exercise of the option requires the giving of notice in the manner and within the time period specified by the contract.").

It has long been established that a contract should be read as a whole so that each provision of the contract is given a reasonable interpretation if at all possible. *S.D. Shaw & Sons, Inc. v. Joseph Rugo, Inc.,* 343 Mass. 635, 640, 180 N.E.2d 446, 449 (1962); *King Features Syndicate, Inc. v. Cape Cod Broadcasting Co.,* 317 Mass. 652, 654, 59 N.E.2d 481, 483 (1945). The provisions of a contract are to be interpreted in the context of the entire agreement. *J.A. Sullivan Corp. v. Commonwealth,* 397 Mass. 789, 795, 494 N.E.2d 374, 378 (1986) ("[a court should consider] every phrase and clause ... [in light of] all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties"). The terms of a contract are to be construed according to their plain and natural meaning unless there is something in the particular case which obliges the court to give a different meaning. *Hampden Trust Co. v. Leary,* 186 Mass. 577, 581, 72 N.E. 88, 89 (1904).

When the language of a contract is clear and unambiguous, the interpretation of that language is to be determined by the court as a matter of law. *Sheahan v. School Committee of Worcester,* 359 Mass. 702, 707, 270 N.E.2d 912, 915 (1971); *Rizzo v. Cunningham,* 303 Mass. 16, 20, 20 N.E.2d 471, 474 (1939). The fact that a controversy exists between the parties over the terminology in a contract does not necessarily create a material issue of fact. The court must determine, as a matter of law, whether the contract is clear and unambiguous after applying the rules of con-

---

determination shall be made according to the forum state's rule in the field of conflict of laws. *See, Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). So long as no policy of the Code would be offended, this Court is free to apply *Klaxon. See, Fore Improvement Corp. v. Selig,* 278 F.2d 143, 147 (2d Cir.1960).

In applying the *Klaxon* rule, this Court relies on the conflict of law rules of the State of New York, the forum state. In the leading case determining New York's rule on conflict of laws, *Auten v. Auten,* 308 N.Y. 155, 124 N.E.2d 99 (1954), New York's highest court adopted the "center of gravity" or the "grouping of con-

tracts" theory with respect to choice of law in contract cases. *Id.* 308 N.Y. at 160, 124 N.E.2d at 101–102.

In applying the "center of gravity" test, this Court notes not only the specific contractual provision regarding the law to be applied, but also the fact that the contract was entered into in Massachusetts, performed in Massachusetts, and that both parties agree that the law of Massachusetts should be applied. This Court can see no reason not to apply Massachusetts law, especially in light of the fact that the parties do not contest the application of Massachusetts law.

tract interpretation. *Boston Five Cents Savings Bank v. Dept. of Housing and Urban Development,* 768 F.2d 5, 8 (1st Cir.1985); *Jefferson Insurance Co. of New York v. City of Holyoke,* 23 Mass.App. 472, 475, 503 N.E.2d 474, 476 (1987). After a careful reading of the Option this Court determines that the language of the Option can be interpreted as a matter of law.

■ The first issue to be addressed is how the Option was required to be exercised. Paragraph 5 of the Option reads as follows:

> Said Option may be exercised by written notice addressed to the Authority at its principal office in Boston and delivered or sent by first-class, registered or certified mail at least one (1) month prior to the expiration of the term of the Present Lease.

Eastern contends that "may" is permissive, and therefore, oral exercise of the Option was permitted. As utilized in the Option provision, Massport reads "may" as mandatory and believes that it limits effective exercise of the Option to written notice.

The word "may" ordinarily connotes discretion while the word "shall" ordinarily connotes a mandate or command. "The word 'may,' in its primary and common use, is enabling only, not imperative." *Hampden Trust Co. v. Leary,* 186 Mass. 577, 581, 72 N.E. 88, 89 (1904). However, words in a contract must be read in the context in which they are used. *J.A. Sullivan Corp. v. Commonwealth,* 397 Mass. 789, 795, 494 N.E.2d 374, 378 (1986) (provisions of a contract are to be interpreted in the context of the entire agreement). A reasonable interpretation of words is favored over a construction which is patently unreasonable. *Stop & Shop, Inc. v. Ganem,* 347 Mass. 697, 701, 200 N.E.2d 248, 251 (1964) (justice, common sense, and probable intention of the parties are guides to construction of written instruments).

The Massachusetts Supreme Judicial Court has stated:

> It is a familiar rule of law that the language of a written instrument is ordinarily to be construed according to its plain and natural meaning. This rule applies unless there is something in the particular case which obliges the court to give the word a different meaning.

*Hampden Trust Co. v. Leary* 72 N.E. at 89.

■ The term "may" must be interpreted as mandatory where the context in which it is used, and in light of all provisions of an agreement, "may" clearly indicates the unambiguous meaning of the language as being mandatory.[4] *See, Chamberland v. Selectmen of Middleborough,* 328 Mass. 628, 630–31, 105 N.E.2d 389, 390 (1952); *Young's Court, Inc. v. Outdoor Advertising Board,* 4 Mass.App. 130, 134, 343 N.E.2d 424, 427 (1976). It is widely recognized that this interpretation of the term "may" is allowed and, in fact required, in many cases. *Black's Law Dictionary* at 883 (5th ed. 1979) ("Regardless of the instrument ... whether constitution, statute, deed, contract or whatever, courts not infrequently construe 'may' as 'shall' or 'must' to the end that justice may not be the slave of grammar."); 57 C.J.S. *May* at 457 (1948) ("Whether ['may'] is to be construed as mandatory or as permissive is to be determined in each case from the apparent intention as gathered from the context, considering the whole instrument in which it is used ...").

This Court finds that the terminology used in the provision dealing with the exercise of the Option requires that written notice be given in order to effectively exercise the Option. It is clear that the term "may", when read in context, refers to the fact that the option is discretionary and may or may not be exercised. It does not refer to the manner of exercise.[5] Thus,

---

**4.** An example of this construction of the term "may" can be found in the Local Bankruptcy Rules. The provision of Local Bankruptcy Rule 9 that "[p]etitions may be filed in any office of the clerk" does not contemplate that they may be filed at other locations. This construction of the term "may" is reasonable even though the Local Bankruptcy Rules use the term "shall" in other provisions of the rules to indicate a mandatory intent.

**5.** The term "may" precedes both the manner and time provisions in Paragraph 5 of the Option and therefore modifies both provisions. It

even if factually established, the attempted "rounded corner" oral exercise of the Option on March 26, 1986 was ineffective. *See, McDonald's,* 888 F.2d at 914.

■ The second issue that must be considered is when the writing exercising the Option had to be sent. The option requires the notice to be sent "at least one (1) month prior to the expiration of the Present Lease." To avoid confusion the parties deliberately structured the Lease term to commence and end on the first and last day, respectively, of a month. It is undisputed that the Lease terminated on May 31, 1986. The common everyday meaning of the term "month" is a calendar month. *See, Black's Law Dictionary* at 908 (5th ed. 1979) ("Word 'month', unless otherwise defined, means 'calendar month', or time from any day of any of the months as adjudged in the calendar to corresponding day, if any, if not any, to last day, of next month."); *Berkshire Gas Co. v. Board of Assessors,* 361 Mass. 873, 281 N.E.2d 602 (1972) (when notice of refusal of tax abatement was received on October 6, 1970, three month period for filing appeal expired on January 6, 1971 and therefore appeal filed January 7, 1971 was untimely); *Boston Penny Savings Bank v. Assessors of Boston,* 314 Mass. 599, 600, 51 N.E.2d 1, 2 (1943) (the term "month" means calendar month for purposes of calculating the 4 month period within which tax assessor had to act as distinguished from the 90 day period within which the taxpayer had to appeal the assessor's decision).

In discussing the computation of time under Federal Rule 6, *Moore's* states:

If the prescribed period of time is designated in months, the word "month" means *calendar* month and not a *lunar* month of 28 days, in the absence of a statute prescribing a different definition.

2 *Moore's Federal Practice* ¶ 6.04 (2d ed. 1985) (Emphasis in original) (Citing *Guaranty Trust & Safe Deposit Co. v. Green*

*Cove Springs & Melrose R. Co.,* 139 U.S. 137, 11 S.Ct. 512, 35 L.Ed. 116 (1891)). *See, Siegelschiffer v. Penn Mutual Life Ins. Co.,* 248 F. 226, 227 (2d Cir.1917), *cert. denied,* 246 U.S. 654, 38 S.Ct. 578, 62 L.Ed. 923 (1918).

In accordance with the ordinary meaning of the term "month" as denoting a calendar month, this Court holds that the last day to exercise the Option was April 30, 1986, the last day of the month preceding the May 31, 1986 termination date of the lease. The language of the Option is unambiguous and may be interpreted as a matter of law. It is irrelevant how parties not involved in drafting the original Option may have interpreted the term "month", particularly when evidence of these parties' interpretation of the term arose after the time to exercise the option had expired. Consequently, Eastern was required to exercise the Option by sending written notice to Massport on or before April 30, 1986. Eastern does not make any claim that a writing evidencing its intent to exercise the Option was in existence prior to May 1, 1986. Therefore, this Court finds that Eastern did not effectively exercise the Option in a timely fashion.

In any event, the dispute as to whether April 30 or May 1 was the last day to send notice to exercise the Option is immaterial to this proceeding since notice was not actually sent until May 7, 1986. Even if this Court, as a court of equity, was to apply the most liberal of constructions as to the measuring period and hold that Eastern had until May 1 to exercise the Option, Eastern still failed to do so. It is undisputed that although Mr. Berger's letter attempting to exercise the Option was dated May 1, 1986, it was metered in Eastern's mailroom on May 6 and hand-delivered to the United States Post Office in Miami on May 7.[6]

■ Under Massachusetts law notice is "sent" for purposes of exercising rights

---

would be unreasonable to construe the clause as permissive with respect to both the manner and time of exercise. Under such a construction, there would never have been a deadline for Eastern's exercise of the Option.

6. *See,* Massport's 13(h) Statement at ¶ 8 and Eastern's 13(h) Counterstatement at ¶ 8.

under an option contract when it is posted with the United States Post Office. *See, McTernan v. LeTendre,* 4 Mass.App. 502, 504, 351 N.E.2d 566, 567 (1976) (the majority rule which is followed in Massachusetts is that acceptance by mail is "effective upon posting"); *See also, Restatement (Second) of Contracts* § 63(a) (1981) (an acceptance under an option contract is not operative until it is put out of the offeree's possession); 1 Corbin, *Contracts,* § 78 at 333 (1963) (contract is not formed until "the letter of acceptance is put into the possession of the post office department"). The rationale of this rule is that an option contract does not ripen into a bilateral contract until the offeree's letter of acceptance is put irrevocably out of his possession and control. For purposes of the "mailbox rule" an "employee's possession is treated as that of the employer." *Restatement (Second) of Contracts* § 63, comment (e) and illustration 11. Therefore, Eastern's letter was not "sent" until May 7, the date of receipt by the United States Postal Service. An attempted exercise of the Option on that date was untimely and ineffective.

## II. WAIVER

■ Eastern also advances the proposition that if this Court found that the Option had not been effectively exercised, then in the alternative Massport had waived its right to rely on this failure by its own conduct. Eastern asserts that the following conduct on the part of Massport constitutes waiver: (a) Massport failed to object to Eastern's attempt to orally exercise the Option; (b) Massport failed to give Eastern notice until October 28, 1986 of the Lease expiration; and (c) Massport's acceptance of rent and acquiescence in Eastern's continued use of the premises.

■ Under Massachusetts law, a party asserting waiver must demonstrate the intentional relinquishment of a known right. *Rose v. Regan,* 344 Mass. 223, 229, 181 N.E.2d 796, 800 (1962). Only where a party reasonably relies on the representations of another to its detriment does estoppel apply. *DeSisto's Case,* 351 Mass. 348, 351–52, 220 N.E.2d 923, 925 (1966). This Court finds that Massport had no duty to object to Eastern's attempt to orally exercise the Option; Eastern was obligated to know how to properly exercise the Option to which it was party according to its terms. *See McDonald's,* 888 F.2d at 914.

Eastern's contention that it did not get notice of the Lease expiration from Massport until October 28, 1986 is also unconvincing. It is undisputed that Massport sent a letter to Eastern dated June 3, 1986, in which it stated that "[a]lthough we did not receive written notice from Eastern within the agreed notice period, we are prepared to negotiate with Eastern for your continued hangar tenancy." In light of the fact that the maximum rent payable by Eastern in the event that the Option was exercised was well below the "market" rent for the premises, it is disingenuous for Eastern to claim that it thought this letter was a "mild chastisement". Consequently, this Court finds that the letter, in addition to further correspondence and meetings over the Summer of 1986, put Eastern on notice that Massport believed that the Lease had expired by its terms.

The last situation that Eastern claims demonstrates an intentional waiver of rights is Massport's acceptance in March 1987 of a $100,000 check without a restrictive endorsement. This was Eastern's first payment since before its purported exercise of the Option, and such payment followed a letter from Massport dated October 28, 1986, which stated that "[t]he Authority will accept as an *interim use and occupancy charge* $10,000 per month payable in advance." (Emphasis added). A $100,000 payment in March 1987 would represent the correct payment under the terms of the October 1986 letter. There is no waiver as a matter of law in Massachusetts when the landlord makes it clear to the tenant that the landlord is reserving its rights. *See, Corcoran Management Co. v. Withers,* 24 Mass.App. 736, 746, 513 N.E.2d 218, 224 (1987); *Slater v. Krinsky,* 11 Mass.App. 941, 942, 416 N.E.2d 983, 985 (1981). In this case, Eastern has made no showing that Massport had waived any of its rights.

## III. EQUITABLE RELIEF

█ Eastern argues that if it did not effectively exercise the Option, and if this failure was not waived by Massport, then alternatively, Eastern is entitled to equitable relief. Eastern asserts the following facts in support of its position: (a) that it paid $500,000 consideration for the Option; (b) that it made up to $500,000 worth of improvements to the premises during the twenty five (25) year term of the lease; (c) that its delay was "slight and inadvertent"; (d) that Massport was not prejudiced by the delay; and (e) that Massport would receive a windfall if Eastern were not granted equitable relief.

Eastern's payment of the $500,000 as part of the transaction which involved the initial granting of the Option by Massport is now characterized by Eastern as payment for the Option. In contrast, Massport characterizes the payment as financing for a larger hangar than called for in the Lease. It is undisputed that $500,000 was paid in cash at the time the Option was granted by Massport, but Eastern did receive a hangar facility that was worth $500,000 more than specified in the Lease without addition rental payments. Therefore, Massport was not unjustly enriched by Eastern's payment, since Eastern obtained the beneficial use of a more expensive facility for the term of the Lease.

The actual amount that Eastern has expended on improvements or repairs is disputed. Article VI(a) of the Lease required that "[l]essee, at its own expense, shall make any and all repairs and replacements necessary to keep the demised premises in a good state of repair." Although this Court makes no finding on the amount or characterization of the payments for improvements or repairs (other than the undisputed portion of the parties' 13(h) Statements), the expenditure of $500,000 over a twenty-five (25) year period would not be an unreasonable figure to spend for required leasehold repairs for a facility of the type involved. Thus, Eastern's "improvement" argument is not persuasive.

Finally, to bolster its equitable argument, Eastern asserts a windfall for Massport in the event of a strict and adverse interpretation of the "mailbox rule" and the applicable facts, *i.e.:* that the delay by Eastern in giving the required written notice was a *de minimis* one (1) to eight (8) days; that Massport has made no showing of prejudice by failing to show the presence of another tenant ready and willing to lease the facilities; that this Court can consider Eastern's purported oral exercise of March 26, 1986 as a sufficient and material compliance; and that if Eastern is denied equitable relief then Massport will unconscionably be able to re-lease the custom built hangar to Eastern or lease to another tenant at rental payments substantially higher than those called for under the Option.

It is a well-settled rule in Massachusetts that "[a] party who stumbles in exercising an option is generally not entitled to equitable relief." *Loitherstein,* 11 Mass. App.Ct. at 96, 413 N.E.2d at 1149. In a case that is similar to the instant case the Massachusetts Supreme Judicial Court held that where the lease provides that written notice must be given on or before a specified date, there must be no delay, because time is of the essence of the option, both at law and in equity. *Donovan Motor Car Co. v. Niles,* 246 Mass. 106, 140 N.E. 304 (1923). *Accord, Bickford v. Dillon,* 321 Mass. 82, 71 N.E.2d 611 (1947). Eastern has not provided any authority for this Court to grant it equitable relief for failure to timely exercise the option. The cases cited by Eastern in its briefs all deal with the availability of equitable relief when notice of the exercise of an option has been timely, but there has been a later failure to meet a condition for the exercise of the option. *See, Horgan v. Ogilvie,* 361 Mass. 13, 17, 277 N.E.2d 821, 823 (1972). This Court concludes that Eastern is not entitled to such relief under the law of Massachusetts as enunciated by the recent First Circuit decision in *McDonald's.* 888 F.2d at 914.

Although Eastern is not entitled to equitable relief in terms of the exercise of its Option, it may be entitled to equitable relief in the assessment of a fair and reason-

able use and occupancy charge since the expiration of the Lease. If Massport's request for a determination of the amount of use and occupation charges payable by Eastern cannot be resolved by the parties, then they should schedule a hearing date with Chambers.

CONCLUSION

Based on the foregoing discussion, Massport's Motion for Summary Judgment is hereby granted to the extent that this Court determines that Eastern did not effectively exercise the Option, and Eastern's Motion for Summary Judgment is hereby denied.

It is so ORDERED.