Agnes, A.J.
This case consists of two related civil actions arising out of an alleged breach of a covenant not to compete for consideration between the plaintiff, Quaboag Transfer, Inc. (“Quaboag”), and two former employees and shareholders. More specifically, the plaintiff asserts that the defendants Koiy Bryant and Deborah Halpin violated the non-solicitation provision of a covenant not to compete.[1] This matter is before the court on the defendants’ motions for summary judgment. Quaboag has filed cross motions for summary judgment. For reasons discussed below, the defendants’ motions are ALLOWED, and the plaintiff s cross motions for summary judgment are DENIED.
BACKGROUND
The essential facts are not in dispute. Quaboag is a closely-held, family-owned corporation in the business of warehousing and transportation. It was founded in 1977 by Kirk M. Bryant. After Kirk M. Bryant’s death in November of 1989, shares in Quaboag were placed in a trust. Kirk M. Bryant’s wife then distributed the shares in voting and non-voting classes to their four children, the defendants Kory Bryant and Deborah Halpin, Kirk C. Bryant, and Lori Bryant who is not a participant in this litigation. Upon their father’s death, Kirk C. Bryant assumed the position of president, Kory Bryant assumed responsibility for the shipping department, and Deborah Halpin worked in several capacities, including handling the company’s payroll, accounts receivable, inventory control and customer service, as well as working as a truck dispatcher and developing the company’s computer software programs.
At some point between 1999 and 2000, Kory Bryant and Deborah Halpin ceased working at Quaboag after a dispute arose between the siblings. Subsequently, Kory Bryant and Deborah Halpin entered into agreements for the redemption of their stock with Quaboag and Kirk C. Bryant. Simultaneously, with the assistance of counsel, the parties entered into a covenant not to compete in exchange for the payment by Quaboag of substantial consideration. This covenant contains the following provision, the interpretation of which is at issue:
Nonsolicitation Covenant. For a twelve- (12) year period commencing on the date hereof, Seller[2] shall not, directly or indirectly, (a) employ or contact any person who is employed or engaged by the Company or in any manner seek to induce any such person to leave his or her employment or engagement with the Company . . .
Kory Bryant began working for Rand Whitney Corporation in or about 1999 as a shipping superintendent. In asserting that Kory Bryant breached the non-solicitation covenant, the plaintiff relies on two (2) telephone calls which Kory Bryant made to Quaboag employees during regular business hours in March of 2001, just two or three months after he agreed not to compete with Quaboag. The purpose of one call was to obtain the telephone number of an independent trucking company which Quaboag has used to haul material. Additionally, it appears that Rand Whitney had used the same trucking company in the past. The purpose of the second call was to obtain a calculation of the cost to transport products from Pennsylvania to Worcester, Massachusetts. Quaboag owns a computer software program which performs this mileage-based calculation.
Since selling her stock in January of2001, Deborah Halpin has not been employed by anyone else or anywhere else, as she has worked at home taking care of her three children. Subsequent to entering the covenant not to compete, Ms. Halpin has engaged in numerous instances of intentional social contact with several Quaboag employees with whom she is good friends. Ms. Halpin has known one such employee for over twenty (20) years since they worked together in a racquetball club in Charlton. The summary judgment record does not contain any evidence that Ms. Halpin’s contacts involved any business-related conduct or discussions. In her deposition, Ms. Halpin stated that *258 her communications were strictly personal and social in nature. In response, the plaintiff points solely to the non-solicitation provision, arguing that it prohibits any and all contact, including social contact.
DISCUSSION
I
Summary judgment shall be granted when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Opara v. Mass. Mutual Life Ins. Co., 441 Mass. 539, 544 (2004). The burden of affirmatively demonstrating the absence of a triable issue and entitlement to judgment as a matter of law lies with the moving party. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party can satisfy this burden by setting forth affirmative evidence negating an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706,716 (1991). Once the moving party has met its burden, the non-moving party then must “respond by set[ting] forth specific facts showing that there is a genuine issue for trial.” Kourouvacilis, 410 Mass, at 716, citing Mass.R.Civ.P. 56(e).
II
A
The interpretation of a contract involves a question of law,[3] except when facts are in dispute that are material to its meaning. See Robert Indus., Inc. v. Spence, 362 Mass. 751, 755 (1973); Freelander v. G.&K. Realty Corp., 357 Mass. 512, 516 (1970). However, no form of words is “self-interpreting.” Antonellis v. Northgate Construction Co., 362 Mass. 847, 851 (1973). The words of a contract must be examined in light of the circumstances surrounding its making to ascertain the intention of the parties. See Louis Stoico, Inc. v. Colonial Development Corp., 369 Mass. 898, 902 (1976); Clark v. State Street Trust Co., 270 Mass. 140, 152 (1930). A contract “must also be interpreted as a whole and effect must be given to all of its provisions in order to effectuate its overall purpose.” Baybank Middlesex v. 1200 Beacon Properties, Inc., 760F.Sup. 957, 963 (D.Mass. 1991). See also Shea v. Bay State Gas Co., 383 Mass. 218, 222-23 (1981) (“Contract interpretation is largely an individualized process with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties’ intention . . . [Thus, a contract is interpreted] with reference to the situation of the parties when they made it and to the objects sought to be accomplished”); Lewis v. Chase, 23 Mass.App.Ct. 673, 677 (1987) (“A contract should be construed to give it effect as a rational business instrument and in a manner which will carry out the intent of the parties”). Moreover, “[a]n interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one that leaves a part useless or inexplicable.” S.D. Shaw & Sons, Inc. v. Joseph Rugo, Inc., 343 Mass. 635, 640 (1962); USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116 (1989) (“The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose”). “As a result, the scope of a party’s obligation cannot ‘be delineated by isolating words and interpreting them as though they stood alone.’ ’’Starr v. Fordham, 420 Mass. 178, 190 (1995) (citations omitted).
B
The plaintiff is correct in asserting that the covenant not to compete arose out of the sale of abusiness between sophisticated parties who were represented by counsel and involved significant consideration. The plaintiff is also correct in distinguishing the covenant at issue from covenants restricting post-employment activities without consideration. See Wells v. Wells, 9 MassApp.Ct. 321, 323-25 (1980) (liberal enforcement of buyer-seller covenants). Additionally, there is no basis to doubt that Quaboag entered the covenant not to compete with legitimate business purposes in mind. A primary concern was Quaboag’s future success. Its interests include protecting itself from loss or misuse of its employees, customers and/or business information due to conduct by the defendants. On its face, and the plaintiff argues, the non-solicitation covenant forbids “contact,” and there was “contact” by the defendants.
The critical element missing from the plaintiffs analysis is the failure to consider the significance of the context in which the words of the covenant were used. This court would not fulfill its responsibility to give force to the intent of the parties if it simply looked to the form of the words used by the parties. The words “no contact” in the agreement in question were used in the context of a non-solicitation agreement. The term “solicit” denotes more than simple contact. It consists of “an attempt to obtain something by persuasion, or to ask for the purpose of receiving.” See William Gallagher Associates Ins. Brokers, Inc. v. Everts, II, No. 199900519C, 13 Mass. L. Rptr. 716, 2001 WL 1334763, at *8 (Mass.Super. Sept. 6, 2001) (employing similar analysis to employment covenant not to compete), citing Black’s Law Dictionary 1248 (5th ed. 1979). An examination of the heading, “Non-solicitation Covenant,” contained in the covenant suggests it was intended by the parties to bar only contact of this nature. The non-solicitation provision applies only to conduct of a competitive nature when it appears within the context of an agreement such as the “Covenant Not To Compete.”[4] There is no evidence that the conduct complained of has hampered Quaboag’s stability or success in any manner.
If the contract language is read as the plaintiff suggests it means that the defendants were prohibited from engaging in any form of direct or indirect contact *259 or communication, regardless of the nature of such exchanges, with any Quaboag employees for a period of twelve (12) years beginning on January 1,2001. Not even in the context of civil restraining orders issued to protect people from domestic violence under G.L.c. 209A is the prohibition of “contact” understood in such a strictly formalistic manner. See Commonwealth v. Consoli, 58 Mass.App.Ct. 734, 738-39 (2003) (“It may well be that a brief, civil, conversation-ending response to an unsolicited contact initiated by the beneficiary of a protective order, particularly when the beneficiary is a child, would not violate the order itself. Orders of this type, after all, are issued to protect people from abuse or its likelihood, not to strip away humanity by enjoining routine civilities responsive to unsolicited greetings. Indeed, in Commonwealth v. Leger, 52 Mass.App.Ct. 232, 235-37 (2001), we built on Commonwealth v. Silva, 431 Mass. 194 (2000), to hold that a contact initiated by a defendant subject to a c. 209A order would not violate the order if the contact was neither threatening nor uncivil and was incidental to the defendant’s exercise of his right to speak to his children.”).
C
Based on the above considerations, there are no facts indicating that Deborah Halpin breached the non-solicitation provision of the covenant not to compete. She worked with Quaboag for approximately eighteen (18) years. As such, she likely established lasting professional and personal ties with employees in the Quaboag community. Ms. Halpin’s deposition testimony indicates that as she understood the covenant, she could not contact employees or customers for the purpose of enticing them away from Quaboag or interfering with business operations. The fact that Ms. Halpin’s continued friendships and frequent social encounters could give her a competitive advantage in the future if she engaged in any act of solicitation (of which there is no evidence in the record before me) is not enough to demonstrate a breach by Ms. Halpin.
Of even less significance are the telephone calls by Kory Biyant to Quaboag employees. The purpose of the first call was merely to obtain a phone number for an independent trucking company that he knew Quaboag had used in the past. While Quaboag asserts that the computer program, which was the subject of the second call, is used by Quaboag to gain a competitive advantage, no facts suggest that anything about the call was of a competitive nature. There is no indication that the same information is not readily available from other trucking companies, or that the information obtained could affect Quaboag’s employees, customers or private business information. In fact, there is no indication that a similar quote could not be obtained by any interested caller who is not a Quaboag employee.
The plaintiffs motion states that “(t]here can also be no serious dispute that, given the risk posed by [the defendants] to Quaboag’s future success in the event [he or she] decided to compete against Quaboag, any contact with Quaboag’s employees is a material breach of [his or her] obligations to Quaboag.” (Emphasis added.) This statement supports the finding that the conduct complained of lacks the required quality of competitiveness, as there is no allegation that such an “event” has occurred. The plaintiff also contends that the above interpretation deprives it of the benefit of its purchase of the security of knowing that the defendants would have no future contact with Quaboag employees. In support, the plaintiff argues that the twelve (12) year no contact period is necessary for employees to become distanced from and hopefully unfamiliar with the defendants. This line of reasoning does not comport with the proper interpretation of the covenant.
In the alternative, the plaintiff contends that the contract provision is ambiguous, thus creating a question of fact for the jury. “However, an ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other ... A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998) (citations omitted). As discussed above, based on the circumstances and the ordinary meaning afforded to the construction of the non-solicitation provision, there is no such susceptibility. The covenant not to compete contains no ambiguities, and therefore it is appropriate for this Court to enter summary judgment in favor of the defendants.
CONCLUSION AND ORDER
For the foregoing reasons, the defendant’s conduct does not violate the covenant not to compete, and therefore does not extinguish Quaboag’s payment responsibility thereunder. It is hereby ORDERED that the defendants Kory Bryant and Deborah Halpin’s motions for summary judgment are ALLOWED. It is further ORDERED that the plaintiff Quaboag Transfer, Inc.’s cross motion for summary judgment is DENIED.

The summary judgment exhibits do not provide a complete portrayal of the transaction between Quaboag and the defendants. However, it appears that the relevant portion of the transaction resulted in two separate contracts, a Stock Redemption Agreement and a Covenant NotTo Compete, each involving substantial consideration paid by Quaboag.

The term “Seller” refers to Kory Bryant and Deborah Halpin in their respective agreements with Quaboag.

The judicial role in the interpretation of a contract is best described by Chief Justice Rugg:
The aim of all interpretation of writings is to ascertain the meaning intended to be attached to the words by the parties who used them, and to effectuate the true purpose of the parties as thus ascertained. All rules are ancillary to that dominating . . . The construction of a written instrument to be adopted is the one which appears to be in accord with justice and common sense and the probable *260 Intention of the parties. It is to be interpreted as a business transaction entered into by practical men to accomplish an honest and straightforward end. [citations omitted]. Equity looks through the form to the substance and purpose of the agreement and moulds its decree in accordance with what the parties may fairly be presumed to have intended. Every contract implies good faith and fair dealing between the parties to it. The courts always avoid, if possible, any construction of a contract that is unreasonable or inequitable.
Clark v. State Street Trust Co., 270 Mass, at 151-53 (citations omitted). See also Waldo Bros. v. Platt Contracting Co., 305 Mass. 349, 355-56 (1940); Fay, Spofford & Thorndike, Inc. v. Massachusetts Port Authority, 7 Mass.App.Ct. 336, 342 (1979).

The terms of the pertinent section of the “Covenant Not To Compete” are:
Nonsolicitation Covenant For a twelve (12) year period commencing on the date hereof, Seller shall not, directly or indirectly, employ or contact any person who is employed or engaged by the Company or in any manner seek to induce any such person to leave his or her employment or engagement with the Company, . . .
The reading advocated by the plaintiff is based on the presence of a comma after the word "Company.” This does not represent the agreement of the parties. See Fried v. Fried, 5 Mass.App.Ct. 660, 663 n. 4 (1977) (court must interpret clause as it is, not as it might have been had the parties distinguished the modifying phrase by preceding it with a comma).